(Surrogate's Court, Cattaraugus County.   January, 1905.)

1. WILL—ADMISSION OF DEBT—EFFECT.
    A will recited the amount of testator's assets, consisting almost entirely of life and accident insurance, and acknowledged an indebtedness to B. of $3,000, and provided that "I want her to have $3,000." *Held* not to affect the liability of the estate for the debt to B.

2. SAME—RESIDUARY LEGATEES.
    Where a will acknowledged an indebtedness to B., and stated that testator wished it paid, and further stated that "I want her to have an equal share with my brothers and sisters after all my debts are paid," it made the brothers and sisters as well as B. residuary legatees, to the exclusion of a nephew.

3. SAME—PROCEEDS OF INSURANCE POLICIES.
    Laws 1892, p. 2015, c. 690, § 212, relating to the disposition of the proceeds of life insurance policies, has no application to the proceeds of accident or casualty insurance, and such proceeds are as much the subject of testamentary disposition as the proceeds of regular life insurance, made payable to the estate.

In the matter of the judicial settlement of the estate of Simon J. Smith, deceased.   Decree rendered.

Ward J. Wilbur, for administrator.
Ottaway & Munson, for Mrs. Billsborough.
J. M. & G. M. Congdon, for special guardian.

DAVIE, S.   Simon J. Smith died February 2, 1902, leaving no widow or descendants; his father, Simon Smith, then living, being his only heir at law and next of kin.   Decedent's death resulted from an accidental gun-shot wound.   After sustaining such injury, and on the day of his death, decedent caused his last will and testament to be prepared, and duly executed the same.   This will was admitted to probate by the Surrogate's Court March 26, 1902, and letters of administration with the will annexed issued thereon to Joseph Smith, a brother of the decedent, who now files his account for judicial settlement.   The only controversy arising on this accounting relates to the construction of such will, which reads as follows:

"Feb. 2—1902

"I am insured in the Ætna $5,000.   Travelers $5,000.   Select Knights $2,000. Empire Degree of Honor $1,000.   I owe Mrs. Billsborough in the neighborhood of $3,000.   I want her to have $3,000, and then I want her to have an equal share with my brothers and sisters, after all my debts are paid.
    "Witnesses—                                   Simon J. Smith.
        "Herman Johnson.                          Geo. A. Slender.
        "J. D. Zwetsch.                           R. A. Davis.
        "A. L. Borden.                            Geo. H. Davis.
        "J. W. Oakes.
"In the presence of these witnesses I appoint my brother Mr. Joseph Smith as executor of my estate.                           Simon J. Smith."

At the time of decedent's death, he had two brothers, three sisters, and one nephew, Simon J. Irish, the only child of a deceased sister.   Simon Smith, the father of the decedent, died intestate

October 21, 1902. The nephew, who is a minor, appears by his special guardian; claiming the right to share in the distribution of the estate equally with Mrs. Billsborough and the brothers and sisters. It is contended on his behalf that the decedent died intestate, except as to the provisions made by him for Mrs. Billsborough; that this will simply constitutes a testamentary recognition of decedent's indebtedness to Mrs. Billsborough, and a bequest to her of such a portion of the residuary estate as shall equal the shares of the brothers and sisters therein; that the estate should be divided into seven equal parts, Mrs. Billsborough, each of the brothers and sisters, and the nephew being entitled to one of such parts. On the contrary, it is contended that the will effectually disposes of the entire residuary estate; dividing it equally between Mrs. Billsborough and the brothers and sisters, excluding the nephew.

In construing this will there are certain fundamental principles established by the authorities which should be borne in mind. The primary duty is to ascertain and carry into effect the intention of the testator. If the language plainly indicates the testator's intention, resort will not be had to extraneous circumstances. Bradhurst v. Field, 135 N. Y. 564, 32 N. E. 113. Nor are we permitted to investigate the testator's motives or criticise the reasonableness of the provisions of the will, if they violate no principle of law or morality. Champlin v. Champlin, 58 N. Y. 620; Howland v. Union Theological Seminary, 5 N. Y. 193; Bolton v. De Peyster, 25 Barb. 539. If, notwithstanding unskillful and inaccurate phraseology, the testator's intention can be clearly discovered from the writing itself, such intention must prevail. Masterson v. Townshend, 123 N. Y. 458, 25 N. E. 928, 10 L. R. A. 816; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Bliven v. Seymour, 88 N. Y. 469. The presumption prevails, where a will exists, that the testator did not intend to die intestate as to any of his property, and a construction preventing partial intestacy is favored. Schult v. Moll, 132 N. Y. 122, 30 N. E. 377; Byrnes v. Baer, 86 N. Y. 218; Kelley v. Hogan, 71 App. Div. 343, 76 N. Y. Supp. 5. Words may also be transposed, rejected, or supplied, so that the will may express the intention of the testator. Starr v. Starr, 132 N. Y. 154, 30 N. E. 384; Phillips v. Davies, 92 N. Y. 199. This rule, however, does not authorize the making of a new will or a new scheme of testamentary disposition, but simply authorizes the court to discover and effectuate the testator's intention. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

This will contains first a recital of testator's assets, the same consisting almost entirely of life and accident insurance. It then acknowledges testator's indebtedness to Mrs. Billsborough. Then it provides, "I want her to have $3,000," evidently in payment of such indebtedness. So far we encounter no difficulty or ambiguity in the terms of the will. The expression, "I want her to have $3,000," does not modify to any extent the liability of his estate for such indebtedness. Uncertainty, however, exists in the final clause of the will, which reads as follows: "Then I want her to have an

equal share with my brothers and sisters after all my debts are paid." Does this phraseology constitute a bequest of any portion of the estate to Mrs. Billsborough or to the brothers and sisters? The expression "I want her to have" is sufficient to constitute a bequest. These words are used in the sense of, and are equally effective as, the words "give" or "bequeath." In Bliven v. Seymour above cited, the phraseology considered was as follows:

"Of the $1,000 devised to my daughter Amelia, in case she should die not leaving any child or children living, then the $1,000 I wish to go to my daughter Emily's children."

The court says (page 476, 88 N. Y.):

"The criticism then strikes upon the word 'wish' in the bequest over. It is plainly used in the same sense as if he had said 'I will,' or 'I direct.' A failure to use appropriate technical language, or a misapplication of legal terms, will not defeat an intention clearly manifested and sufficiently disclosed by an examination of the will itself. Parks v. Parks, 9 Paige, 107; De Kay v. Irving, 5 Denio, 646."

It was plainly testator's intention to give to Mrs. Billsborough a share of his residuary estate. Such intention, however, could only be rendered effectual by holding the brothers and sisters to be legatees under the will, as the extent of her interest was to be determined by the size of the shares of the brothers and sisters. If the brothers and sisters take any interest whatever, it must be as legatees, they not being next of kin. If decedent died intestate as to any part of his estate, the title to such portion immediately vested absolutely in the father. This would render the brothers and sisters legatees by necessary implication.

In Matter of Vowers, 113 N. Y. 569, 21 N. E. 690, Finch, J., says:

"The question of construction raised by the language of the testator in framing the provision for his wife is of a character so unusual that we can find no precise parallel or precedent in the courts of our own state. The case is one of a legacy by implication; that is, created not by a direct or express gift, but inferred from language which shows an intention to give the legacy, and can have no other reasonable explanation. Instances of such legacies are not uncommon in the English reports, and a reference to some of them will disclose their general character and the rule of solution adopted."

The court then proceeds by referring to the case of Goodright v. Hoskins, 9 East, 306. In that case the testator devised certain real estate to his son Richard until the latter's eldest son, Thomas, should attain 21, and no longer, and contained the further statement that the son should deliver up said premises as aforesaid. It was argued that there was no gift to Thomas, in terms, on his arriving at the age of 21. But Lord Ellenborough held that there was a strong implication from the words of the will that the testator intended that Thomas should have the estate upon his arriving at the age of 21. In the same opinion the court refers to the case of Thorp v. Owen, 2 Hare, 607, where the testator's direction that everything should remain "as it now is" during the life of his wife was held to give her a life estate by implication. The other authorities referred to in this same opinion clearly recognize the existence

·of a bequest by implication when necessary to effectuate the testa-
·tor's intention.

It, however, will not be necessary to rest the claim of the broth-
·ers and sisters upon the principle of a bequest by implication, be-
·cause a fair and reasonable construction of the language used makes
them legatees by the express terms of the will. The language of
the will is, "I want her to have an equal share with my brothers
and sisters after all my debts are paid." This is simply saying, "I
want Mrs. Billsborough and my brothers and sisters to have an
·equal share after all my debts are paid." Effect being given to
the words "I want them to have," as above set forth—that is, equiva-
lent to "will," "give," or "bequeath"—renders the meaning of this
sentence as follows: "I give to Mrs. Billsborough and to my broth-
·ers and sisters an equal share of such of my estate as may remain af-
ter payment of all debts."

The funds remaining for distribution are the proceeds of two of
the policies specified in the will, namely, one of $5,000 issued to the
testator by the Ætna Accident Insurance Company, and one of
$3,000 by the Travelers' Accident Insurance Company. It is
·claimed on the part of the special guardian that this fund having
been derived in the manner above stated, although such policies
were made payable to the estate of the decedent, they were not sub-
ject to disposition by will of the decedent; citing in that connec-
tion the provisions of section 212, c. 690, p. 2015, of the Laws of
1892. The provisions of this statute, however, have no application
to the proceeds of accident or casualty insurance. The proceeds of
such insurance are as much the subject of testamentary disposition
·as the proceeds of regular life insurance made payable to the estate.

A decree will accordingly be entered judicially settling the ac-
counts of the administrator as filed, and providing for a distribu-
tion of the residue of the estate among the testator's two brothers,
two sisters, and Mrs. Billsborough in equal shares.

Decreed accordingly.