were wanted; the bidding was active and genuine. There were then, as now, no lots save on maps.

The result is informing. It is just the instruction needed to solve the present question. It took place at such time and under such circumstances as advise the commissioners and the court of the very facts needed to be known to decide in this proceeding, viz.: Was this land, when the city took it in May, 1907, valuable for sale in lots, and was there a demand for it in such subdivisions, and what were the lots worth? The Kneeland sale answers clearly every pertinent question and leaves nothing in doubt.

This court cannot amend the report of the commissioners; but the order should be reversed, and the proceedings remitted to the commissioners, to amend their report by inserting the names of the appellants as the owners of the parcels in question and as entitled to the award.

Order reversed, with $10 costs and disbursements, and proceedings remitted to the commissioners of appraisal for disposition in accordance with the opinion of THOMAS, J. All concur, except HIRSCHBERG, J., who dissents.

---

## In re HINCHMAN.

(Supreme Court, Appellate Division, Second Department.   November 18, 1910.)

1. PERPETUITIES (§ 6*)—CONSTRUCTION OF WILL—RESTRAINT ON ALIENATION—"AND."

On the death of testator's wife, the will devised the entire estate in trust to the executors, and directed that it be divided into three equal shares, and that the income from each of two of them be paid to his sons, W. A. and D., respectively, during their lives with the remainders over to their issue, respectively, and that the income of another share be paid to his son G. and testator's grandchild William, the son of G., in equal parts during G.'s life, with remainder on his death to such grandchild. The will further provided that, should son G. survive his son William, he should receive the whole income of such share during his life, and "should either of my said sons, W. A. and D. die without * * * issue and my said son G. die without leaving him surviving his said son, whom I call William," then the share of which such deceased received the income shall be paid to the survivors or survivor, provided that the issue of either of sons, W. A. and D., if deceased, shall receive the share to which the parent would be entitled, and the grandchild shall receive the share to which son G., his father, would be entitled if living. *Held*, that the word "and" in the quoted part would not be construed conjunctively so as to show an intention of suspending the absolute ownership, and hence the power of alienation of the shares held in trust during the lives of the other two sons upon the contingency of the death in the meantime of son G. without leaving the grandson William surviving, so that the trust was not void for suspending the absolute ownership of such property for more than two lives in being; the word "and" being construed as "or," either in a will or statute, where the context shows it to have been used in that sense.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 32; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 1, pp. 385–394; vol. 8, p. 7575.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 446*)—CONSTRUCTION—CONSTRUCTION AGAINST INTESTATE.
    That construction of a will will be adopted which sustains it rather
    than that which defeats it, where there are two permissible constructions.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. §
    446.*]

Appeal from Surrogate's Court, Queens County.

Proceedings for the judicial settlement of the account of Percy Hinchman as administrator. From a decree settling the account and providing for the distribution of the estate, Georgena Ferry and others appeal. Affirmed.

See, also, 124 N. Y. Supp. 1117.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

Charles E. Hunter, for appellants.

Leander B. Faber, for respondent Percy Hinchman.

Frank H. Platt, for respondent Mortimer L. Hinchman.

CARR, J. This is an appeal from a decree of the Surrogate's Court of Queens county settling the accounts of an administrator with a will annexed, and providing for the distribution of the estate.

The only question brought up for consideration on this appeal arises from the interpretation of certain trust clauses in the will. The testator provided, first, that his widow should have the interest and income of his entire estate for life. On her death, he bequeaths and devises his entire estate in trust to his executors. He directed the division of the estate into three equal shares. Then he provides that, as to two of these equal shares, the income from each share should be paid to his sons William A. and Douglas Hinchman, respectively, during their lives, with the remainders over to their issue respectively. The income on another share he directs to be paid to his son George W. and his grandchild, the son of George W., in equal portions during the life of George W., and, on the death of George W., the remainder is to be paid to the specified grandchild whom the testator calls "William." Realizing that there would be an intestacy in case the life tenants were not survived in each case by the designated remaindermen—that is, the issue of the sons of William A. and Douglas and the grandson William, respectively—he set out to provide for such contingencies in the following language:

"Should my said son George W. survive his said son whom I call William, then the said George W. is to receive the whole income of said share during his natural life, and should either of my said sons William A. and Douglas die without leaving lawful issue and my said son George W. die without leaving him surviving his said son whom I call William, then and in that event, the share of which such deceased received the income shall be paid to the survivors or survivor, the issue of either of my sons William A. and Douglas if deceased however to receive the share to which the parent would be entitled if living, and the said son whom I call William of my said son George W. to receive the share to which said George W. would be entitled if living."

The appellants contend that the foregoing provisions constitute an illegal suspension of the power of alienation or of the absolute own-

·ership of the personal property for more than two lives "in being," and that the trusts created by the will are therefore void. It is perfectly plain that there is no suspension of the trust estates for more than two lives "in being," as each of the trust estates terminated necessarily on the death of the life tenant, and passed to certain prescribed, though contingent, remaindermen. The scheme of the will is simple enough. If either of his sons William A. or Douglas died without issue, then the remainders in the separate trusts held for their respective benefits would go to the survivors or the survivor of the three brothers, with the qualification, however, that if one or other of these, who might have been survivors, had died leaving lawful issue, then that issue were to have by substitution the rights which their parent would have had had ·he survived. As to the son George W., however, the testator had a special purpose, for he expressly limited the remainder of that separate trust estate to one person only, ·the grandson called William, and to this person alone he limited the right of substitution as to survivorship which would have accrued ·to George W. if alive. It was the apparent motive to exclude from · any share of his estate any issue which George W. might have except the son called "William"; and hence the seemingly involved provision. The intent, however, is clear enough. Under these provisions, it would have been impossible for any one of these trust estates to have been suspended beyond the death of the life tenant, and hence there was no unlawful suspension.

Of course, at the time of the death of the testator, there was an uncertainty as to just which persons might be in being to take at the termination of each of the separate trusts, and the remainders limited were contingent in nature, but there was no uncertainty whatever about the time of the termination of each of the three separate ·trusts as being on the death of each of the three separate life tenants.

The whole argument of the appellants proceeds apparently upon a confusion of ideas. If the whole estate was to be held in trust in solido, instead of in three equal shares, then there would be some basis for their contention. They urge, however, that the use of the word "and" in the sentence which reads as follows: "Should either of my said sons William A. and Douglas die without leaving lawful issue and my said son George W. die without leaving him surviving his said son whom I call William"—indicates a purpose upon the part of the testator to suspend the absolute ownership of the shares held in trust during the lives of the other two sons upon the contingency of the death in the meantime of the son George W. without leaving him surviving his son called William. To adopt this construction would be to render the trust void as suspending the absolute ownership for three lives. Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. To give to the testator's language this meaning because he used the word "and" in the connection above noted would be wholly inconsistent with the plain scheme of the will as a whole. It was used clearly in a disjunctive sense, as is quite common both in spoken and written language. No court should resort to overliteralness simply to destroy a testamentary provision. Where the word "and" appears from the context to have been used in the sense of the word

"or," a court will so interpret it, whether it be in a will or a stat-
ute. Scott v. Guernsey, 48 N. Y. 106. It is a well-settled rule of
interpretation of wills that, even where there are two permissible con-
structions of the language of the testator, that will be adopted which
will uphold rather than destroy the will. Jacoby v. Jacoby, 188 N.
Y. 124, 130, 80 N. E. 676; Matter of Lally, 136 App. Div. 781, 121
N. Y. Supp. 467.

The decree of the Surrogate's Court should be affirmed, with costs.
All concur.