In the Matter of the Estate of Augustus D. Juilliard,
Deceased.

(Surrogate's Court, Orange County, January, 1922.)

Wills — construction of — testator's intention must govern — when
legatee entitled to income up to date of organization of cor-
poration provided for in will — attempted gift to corporation
of income which accrued prior to its organization illegal and
void.

Where the meaning of a testator is apparent the plain import
of the language of his will may not be departed from though
it result in rendering the instrument invalid.

It is the duty of the court in the interpretation of a will
to ascertain from its language, properly interpreted, what the
testator actually intended and then to determine whether
intended provisions are valid.

Testator, who died April 25, 1919, devised and bequeathed
his residuary estate to his executors in trust, with instructions
to organize, as soon after his death as practicable, and within
the lifetime of his nephew and of a partner of testator, a
corporation to be known as the "Juilliard Musical Founda-
tion" and to transfer and pay over the entire capital
of the trust fund to said corporation when organized, for
the uses and purposes provided for in its charter.   The
will contained a further direction that until said corpora-
tion was organized, the executors should pay all income
actually received from the trust fund to testator's nephew,
but that upon such organization being effected, all distribu-
tion of income to him should cease, and that there should be
no apportionment to him of income partially or wholly earned,
but not yet due and payable, at the organization of the
"Juilliard Musical Foundation," and in the event that the
corporation was not organized or for any other reason the
said testamentary provisions should be ineffectual, the entire
trust fund and estate was devised and bequeathed to the
"American Museum of Natural History" and to "St. John's
Guild in the City of New York" in equal shares.   The will
gave testator's partners the right to purchase his interest

in the firm, and in certain mill stocks owned by him, "upon the inventory value" and "on an inventory basis" respectively. The executors and trustees and the surviving partners as of the day of the testator's death consummated a sale of testator's interests in the partnership and in the mill stocks. Interest bearing promissory notes of the surviving partners were delivered to and accepted by the executors and trustees in accordance with the direction of the will, except as to interest dates. The "Juilliard Musical Foundation" was incorporated by the legislature March 30, 1920, and a meeting for the purpose of effecting the organization of said "Foundation" was held April 16, 1920. The notes were dated April 25, 1919, and delivered November 23, 1920. Upon the delivery of the notes the surviving partners also gave a check in payment of any and all interest due from them on account of the notes up to and including October 25, 1920, amounting to $965,471.60. Upon the judicial settlement of the accounts of the executors and trustees and for a construction of the will, the substitutionary legatees asserted claims to the amount of said check, together with certain other income from corporate or governmental securities, which accrued prior to the organization of the "Juilliard Musical Foundation." *Held,* that the intent of the testator was to give to his nephew all income that was due and payable up to the date of the organization of the "Foundation" whether actually reduced to possession or not, and that the remainder of said income should go to the "Foundation."

The attempted gift to the corporation of income which accrued prior to its organization constituted a direction for an illegal accumulation of income and was void.

The nephew was entitled to the income on the notes and all other income that was due and payable up to the date of the meeting held for the purpose of effecting the organization of the corporation, and the testator having failed to give and bequeath the balance of said income it passed to his next of kin under the Statute of Distributions, but before a decree can be granted herein the proceeding must be amended so as to bring in such persons.

The fact that the amount received on the sale of testator's interest in the firm and in the mill stocks was less than the inventory value as stated in the transfer tax proceeding conducted by his executors and trustees, does not alter the fact that the price so paid was the agreed inventory value and a compliance with the terms of the will.

Surrogate's Court, Orange County, January, 1922.    [Vol. 117.

PROCEEDING for the judicial settlement of the account of the executors and trustees and judicial construction of will.

Larkin, Rathbone & Perry (John M. Perry, of counsel), for petitioners.

Rushmore, Bisbee & Stern (Charles E. Rushmore and Emil J. Villanyi, of counsel), for Frederick A. Juilliard.

Davies, Auerbach & Cornell (Edward Cornell, Charles H. Tuttle and Martin A. Schenck, of counsel), for Juilliard Musical Foundation.

Hawkins, Delafield & Longfellow (Lewis L. Delafield and E. J. Dimmock, of counsel), for American Museum of Natural History.

Choate, LaRocque & Mitchell (Richmond Weed and Robert E. Hendrickson, of counsel), for St. John's Guild in the city of New York.

O'Gorman, Battle & Vandiver, for Laura Cornelia Machado.

Frank Lybolt, special guardian.

SMITH, S.  Augustus D. Juilliard, a resident of the town of Tuxedo in this county, died on April 25, 1919, leaving a will duly admitted to probate by this court on the 25th day of September, 1919.

The testator's will made many bequests to relatives and charitable corporations and then disposed of the residue as follows:

" *Forty-fifth:*  I give, devise and bequeath all of the rest, residue and remainder of my estate of whatever

Misc.] Surrogate's Court, Orange County, January, 1922.

kind or nature, including therein all legacies which shall lapse, and all legacies, bequests or other testamentary dispositions which for any reason shall be or become ineffectual or be declared invalid, as follows:—

"(a) Unto my Executors and Trustees hereinafter named. * * * In Trust * * *.

"(b) I do hereby direct and instruct my said Executors and Trustees, * * * as soon after my death as may be practicable and within the liftime of my nephew Frederick A. Juilliard and my partner Robert Westaway, and the survivor of them, to incorporate or cause to be incorporated under the general laws of the State of New York or by special Act of the Legislature of the State of New York, a corporation to be known as the ' Juilliard Musical Foundation,' which shall have authority, among such other powers as may be conferred upon it, to take and hold property and administer, invest and reinvest the same, and to devote the income therefrom to the objects of said organization, which shall be in general scope as folows: (a) to aid worthy students of music in securing a complete and adequate musical education * * *; (b) to arrange for and to give without profit to it musical entertainments, concerts and recitals of a character appropriate for the education and instruction of the general public in the musical arts; and (c) * * * to aid by gift of part of such income * * * the Metropolitan Opera Company in the City of New York, for the purpose of assisting such organization in the production of operas * * *.

"(c) I do hereby direct my Executors and Trustees hereinafter named * * * upon the organization of said corporation the Juilliard Musical Foundation, * * * to transfer and pay over unto the said corporation, the entire capital of the said trust fund created by this section of my Will, marked ' Forty-

Surrogate's Court, Orange County, January, 1922. [Vol. 117.

FIFTH ' in order that said corporation may devote the same under the laws of the State of New York, to the uses and purposes that may be provided in the charter as aforesaid. * * *

"(d) Until the organization of the corporation JUILLIARD MUSICAL FOUNDATION as hereinabove provided (which I trust may be accomplished without any appreciable delay after my death) * * * I direct my said Executors and Trustees under this will to pay over unto said FREDERICK A. JUILLIARD all income that may be actually received from the fund provided to be transferred to said corporation upon its organization, but that upon the oganization of said corporation all distribution of income from said fund unto said Frederick A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable at the time above stated.

" If for any reason the said corporation shall not be organized * * * or if for any other reason the provisions of this clause shall be ineffectual, then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked ' FORTY-FIFTH ' unto the AMERICAN MUSEUM OF NATURAL HISTORY and ST. JOHN's GUILD IN THE CITY OF NEW YORK in equal amounts."

The testator was a partner in a firm known as A. D. Juilliard & Co., and provided for the disposition of his interest therein as follows:

" *Thirty-ninth.* I authorize and empower my Executors and Trustees * * * to sell my interest in the firm of A. D. Juilliard & Company to my surviving partners for a sum which shall equal the value of my interest therein at the date of my death, the value of which interest shall be determined upon the inventory value of all the property of said firm, including the

capital invested, stock on hand and bills and accounts receivable, and deducting outstanding bills and accounts payable, but without including any valuation on the good-will of said partnership, my interest in which I give and bequeath to my said surviving partners absolutely, provided they purchase my interest from my said Executors and Trustees as herein provided, and I authorize my Executors to receive in payment for my said interest in said partnership the notes of the surviving members of my said partnership bearing interest at four and one half per cent. ($4\frac{1}{2}\%$) per annum, and payable one half thereof within five years from the date of my death and the other half within ten years from the date of my death, with the privilege of paying all or any of said notes before maturity.  If my said surviving partners shall not, for any reason, purchase my said interest on the terms set out herein, then I direct my said Executors and Trustees to take such proceedings as are necessary to liquidate my interest in said firm as soon after my death as may be practicable, consistent with the character and operations of said firm.

" I also empower my said Executors and Trustees to sell all my interest in or in the securities of any mills in which I may have an interest at the time of my death to my said surviving partners for a sum which shall equal the value of my said interests as ascertained on an inventory basis.  And I authorize my Executors to receive in payment for my said interests the notes of the surviving members of my partnership bearing interest at four and one half per cent. ($4\frac{1}{2}\%$) per annum, and payable one half thereof within five years from the date of my death and the other half thereof within ten years from the date of my death, with the privilege of paying all or any of said notes before maturity.  If my said surviving partners shall

not, for any reason, purchase my said interests on the terms set out herein, then I direct my said Executors and Trustees to sell the same as soon after my death as may be practicable, consistent with the character and operations of said mills or corporations operating the same.''

The Juilliard Musical Foundation was incorporated by the legislature of the state of New York (Laws of 1920, chap. 89), on March 30, 1920, and the act provides for the organization of said corporation. The meeting for the purpose of effecting said organization was held on April 16, 1920.

On November 23, 1920, the surviving partners of A. D. Juilliard & Co. delivered to the executors and trustees four promissory notes dated April 25, 1919, as follows:

Note for $2,789,109.65 due April 25, 1924; note for $2,789,109.65 due April 25, 1929, in payment for the mill stocks; and note for $4,362,531.92 due April 25, 1924; note for $4,362,531.92 due April 25, 1929, in payment of the interest of A. D. Juilliard in the partnership, together with their check for $965,-471.60 in payment '' of any and all interest due from us on account of the said notes up to and including the interest due on October 25th, 1920.'' These notes provided for the payment of interest at the rate of four and one-half per cent per annum, payable semi-annually on October 25, 1919, April 25, 1920, October 25, 1920, and April 25, 1921, and annually thereafter at said rate. The notes aggregate $14,303,283.14 and amount to $421,011.55 less than the inventory value of said stocks and said partnership interest as fixed for the purpose of assessing the transfer tax due in this estate.

Frederick A. Juilliard, Juilliard Musical Foundation, American Museum of Natural History and St. John's

Guild in the city of New York assert claims to this sum of $965,471.60 together with certain other income from corporate or governmental securities which accrued prior to the organization of Juilliard Musical Foundation on April 16, 1920, and the executors and trustees ask that the will be construed to determine the distribution of the same.

Frederick A. Juilliard claims that the predominate idea of the testator was to divide all income between himself and Juilliard Musical Foundation; that he unquestionably is entitled to the interest on said notes which fell due on October 25, 1919, on the theory that the direction to pay him '' all income that may be actually received from the fund '' should be construed to refer to all income that would vest in possession of the trustees whether collected or not — in other words, all income accrued before the organization of the foundation; and that he is, in fact, entitled to all income received on the theory that the clause in respect to apportionment should be construed to mean that there should be no such apportionment *provided* the foundation could take such income but, if it could not take the same, then he should have all of the income up to the date of such organization that the law would not permit the foundation to take and that the provision for non-apportionment should be regarded as eliminated.

Juilliard Musical Foundation claims that the surviving partners of A. D. Juilliard & Co. did not purchase the testator's interest in said firm and in the mill stocks upon the terms set forth in the paragraphs of the will above quoted, *i. e.*, the inventoried value, but, on the contrary negotiated and bargained and finally bought the same for $421,011.55 less than such inventory value; that the notes and check delivered on November 23, 1920, as a matter of fact together con-

stitute the purchase price of the testator's interest in said partnership and stocks and that such aggregate sum would pass without brand or earmarks to distinguish profits from principal and was, in the hands of the estate, nothing but principal; and, therefore, such entire amount goes to said corporation as " the entire capital of said trust fund " given to said Foundation by the paragraph of the will above quoted.

American Museum of Natural History and St. John's Guild in the city of New York claim that the language of the testator's will precludes Frederick A. Juilliard from any income not actually received; that the legacy to the foundation of such income earned but not received prior to the organization of such corporation fails as involving an unlawful accumulation; and that such income was bequeathed to said substitutionary legatees by the paragraph of the will above granted.

The testator's will, as above quoted, gave his surviving partners the right to purchase his interest in the firm of A. D. Juilliard & Co. and in the mill stocks owned by him "upon the inventory value " and " on an inventory basis," respectively, and the executors and trustees and the surviving partners have consummated a sale of the same, claiming to have acted pursuant to said provision.  The fact that the amount received is less than the inventory value as stated in transfer tax proceedings in this estate conducted by the executors and trustees, and not by the surviving partners, does not alter the fact and the price so paid is the agreed inventory value and a compliance with the terms of the will.  This transaction was properly consummated as of April 25, 1919, the date of the death of the testator, and the notes so given and accepted were in accordance with his directions, except as to the interest dates, and the determination of such

small details of the transaction was within the power of the executors and trustees and in accordance with usual business customs.

The intention of the testator, so long as it is not contrary to some statute or to public policy, must govern (*Salter* v. *Drowne*, 205 N. Y. 204) and, where the meaning of the testator is apparent from the language of a will, the plain import of the language cannot be departed from though it result in rendering the will invalid. *Van Nostrand* v. *Moore*, 52 N. Y. 12.

Every presumption against intentional partial intestacy must be favored (*Kelley* v. *Hogan*, 71 App. Div. 343, 347; *Haug* v. *Schumacher*, 50 id. 562, 566, 567; *Matter of Smith*, 46 Misc. Rep. 210; *Schult* v. *Moll*, 132 N. Y. 122; *Byrnes* v. *Baer*, 86 id. 210), but the duty of the court is not to make a new will to carry out some supposed but undisclosed purpose but to ascertain what the testator actually intended by the language employed by him when properly interpreted and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to construe, not to construct. *Herzog* v. *Title Guarantee & Trust Company*, 177 N. Y. 86.

The intent of the testator was to give to Frederick A. Juilliard all income that was due and payable up to the date of the organization of Juilliard Musical Foundation whether or not it had been actually reduced to possession and that the remainder of said income should go to the foundation. The words " all income that may be actually received from the fund " must be read in connection with the remainder of said paragraph which states " upon the organization of said corporation all distribution of income from said fund unto said Frederick A. Juilliard shall cease and there shall be no apportionment to him of income partially or wholly earned but not yet due and payable at

Surrogate's Court, Orange County, January, 1922.   [Vol. 117.

the time above stated;" in other words, income that was " due and payable " was to go to him whether or not actually reduced to possession prior to that time.

The attempted gift of income as above stated to Juilliard Musical Foundation which accrued prior to its organization constituted a direction for an illegal accumulation of income and was void. *St. John* v. *Andrews Institute,* 191 N. Y. 254.

The claim of American Museum of Natural History and St. John's Guild to this fund cannot be sustained because it is clear from a careful reading of the paragraph of the will above quoted that it is only in the event that the entire residuary bequest in trust shall prove to be ineffectual that they shall take; nor can they take as owners of the next eventual estate. *St. John* v. *Andrews Institute, supra.*

Frederick A. Juilliard is entitled to income on the notes above referred to and all other income that was due and payable up to April 16, 1920, and said Augustus D. Juilliard died intestate as to the balance of said income.

The testator having failed to give and bequeath such income to the person or persons capable of receiving it, such income passes to the next of kin under the Statute of Distributions. *Cochrane* v. *Schell,* 140 N. Y. 516; *U. S. Trust Co.* v. *Soher,* 178 id. 442, 448; *St. John* v. *American Institute, supra.* This fact will make it necessary to amend this proceeding to bring in such persons before the decree can be granted.

Ordered accordingly.