In the Matter of the Estate of SOLOMON SHAPIRO, Deceased.

Surrogate's Court, New York County, May 11, 1929.

*Aaron S. Shapiro* [*Warren C. Fielding* and *William E. Goldman* of counsel], for the petitioners.

*Sylvester & Harris* [*Sidney Harris* and *Chas. L. Sylvester* of counsel], for Abe Gordon.

*Ehrich, Royall, Wheeler & Walter*, for Rubin Shapiro.

*Walter S. Doernberg*, special guardian for Rachel Shapiro, infant.

*Alice Dillingham*, special guardian for infant legatees.

*Stroock & Stroock*, for Montefiore Hospital.

O'BRIEN, S. This testator died in February, 1927. He left a will which was duly admitted to probate. He had no children. He left surviving him a wife, a brother, two sisters and several nephews and nieces. The executors having filed a voluntary intermediate accounting, request a construction of the will. The questions raised involve particularly the 7th paragraph of the will, which purports to dispose of the residue and remainder of testator's estate. Upon the construction to be given this paragraph and upon the determination of the various questions raised, the validity of the disposition of the residue and remainder of all testator's estate must stand or fall. The paragraph in question reads as follows:

" *Seventh.* All the rest, residue and remainder of my estate, real, personal or mixed, wherever situated, I give, devise and bequeath to my executors, in trust, however, for the following uses and purposes.

" (a) To receive all rents, profits and income of my said estate and to pay out the same to my beloved wife, Dora, during the term of her natural life, the sum of Seventy-five hundred ($7,500) dollars yearly; to my brother, William for life, the sum of Twelve hundred and fifty ($1,250) dollars yearly; to my nephew, Rev. Sholom M. Shapiro, for life, the sum of Twelve hundred and fifty ($1,250) dollars yearly; to my sister, Senia Klemans, for life, the sum of Twelve hundred and fifty ($1,250) dollars yearly. All of the above payments to be made in such installments, as my executors shall deem necessary and proper. Should the provision for my brother William be insufficient in the opinion of my executors, to support him, owing to his continued illness, my executors are hereby authorized to increase said allowance in their discretion.

" (b) The rest and remainder of my estate together with the accumulated income and profits thereon, shall, upon the

(and the beneficiaries mentioned in Par.

( ' Seventh ' Sub. Div. (a)

decease of my wife / be distributed among such charitable, benevolent and educational institutions and in such sums, as my beloved wife Dora may by her last will and testament designate, and in the event of her failure to make such designation, my estate shall be distributed between the · institutions named in paragraph ' Third ' of this my will, in amounts proportionate to the bequests therein stated."

Testator's brother William, one of the annuitants or beneficiaries named in this paragraph, died subsequently to the probate of the will. The other annuitants and beneficiaries are living. The contention is made on the one side that the provisions contained in said paragraph 7 are invalid and illegal for the following reasons:

" 1. Because of its clear and unambiguous language the will suspends the power of alienation for more than two lives in being, to wit, for four lives.

" 2. Because there is an utter absence of proof *within the will itself* of an intent to create separate and independent trusts, the principals of which were to be liberated from the trust within not more than two lives.

" 3. Because the executors in trying to read into the will words not mentioned or intended find themselves in the ridiculous position of self contradiction with respect to their arbitrary and unsupported interpretation.

" 4. Because the affirmative proof within this will (aside from its clear and unambiguous language) show that the testator intended one indivisible trust which was to continue until, as he said, the death of his wife and the three beneficiaries named. The provision for the increase of William's allowance negatives the intention to create separate and independent trusts, and the provision for accumulation upon a single fund negatives distinct shares, since the testator, had he intended distinct shares, would have provided for the distribution of the accumulation upon such distinct shares.

" 5. Because the decisions of the courts of this State on practically identical fact situations show clearly that this trust is invalid. The weak attempts to find expressed support within the will for the forced theory of separate trusts are themselves the best evidence of the absence of such expressed intent."

Tersely expressed, the objection is a single one. It is the claim that the entire residuary clause is invalid in that the annuities are for the benefit of the four beneficiaries mentioned and in that, under the language used in said paragraph, there is an illegal suspension of the power of alienation for more than two lives in being, namely, for four lives. Before entering into the discussion of the argument adduced for and against the validity of this provision, and having in mind the fundamental rule of construction that the testator's intention must govern, it is appropriate to refer to the whole tenor of testator's will. In passing it may be noted that the instrument attests the fact that the testator was moved by most admirable impulses that embraced within the generosity of his heart not only those in his immediate household, but more distant relatives and most worthy charities of many and varied kinds,

extending so far as his native village in Lithuania. In paragraph 2, subdivisions (a) to (g), he gives general legacies to his brother, to his sister, to various nephews and nieces, and to daughters of his nephew; and by paragraph 3 he gives general legacies to specific charities, including therein the Montefiore Home for Incurables, to Beth David Hospital, Mount Sinai Hospital, Beth Israel Hospital, Deborah Consumptive Relief Society, Daughters of Jacob, Talmud Torah School in East Broadway, Talmud Torah School and a free loan association in his native town of Zosli (in a provision alternative to the provision for the last two beneficiaries, he names the Zosli Unterstutzung Verein of the city of New York), Jewish Society of Palestine, and finally the building fund of the New Jewish Seminary, or University, on Washington Heights, New York city. In the 4th paragraph he makes a bequest to the " descendants " of Lippe Cherne Shapiro Association, $15,000 in trust to carry out certain purposes. In the 5th paragraph he makes a further bequest to the " descendants " of the Lippe Cherne Shapiro Association of $10,000 for certain specified purposes. In the 6th paragraph he devises four certain pieces of real estate to his wife and also bequeaths to her a mortgage on certain property located in Parksville. The 7th paragraph we have quoted in full. The remaining paragraphs do not set forth bequests or devises, but cover certain routine matters customarily found in wills. In paragraph 13 he directs his executors to pay out of his estate every inheritance, transfer or succession tax chargeable upon any gift, · devise, bequest or provision made by him in his will.

When this will is examined carefully and in the light of the authorities relating to such provisions as are therein contained, not the semblance of a doubt remains as to how Solomon Shapiro intended to dispose of his estate. We are mindful of the fact that wherever four lives are mentioned in connection with a residuary estate the natural propensity is to succumb to the horror produced by the thought of invalid and futile provisions in a will. But an analysis of the language used in paragraph 7, made for the single purpose of determining the intention of the testator, makes the whole paragraph simple and clear and understandable. As was stated by Judge CARDOZO (*Matter of Gallien,* 247 N. Y. 195, 203): " What is needed is nothing more unusual than a common sense appraisal of probabilities and meanings."

(1) There can be no question that testator intended to provide: (a) A fund or funds to be held in trust which would be sufficient to produce an income of $7,500 yearly, to be paid to his wife Dora during her life; (b) a fund or funds sufficient to provide for his brother, William, the sum of $1,250 yearly; (c) a fund or funds

sufficient to provide $1,250 for his nephew, Rev. Sholom M. Shapiro, for his life; and (d) a fund or funds sufficient to provide for his sister, Senia Klemens, for her life the sum of $1,250 yearly. Although under the said paragraph these funds are to remain *in solido,* there is positively no tenable objection to an interpretation which holds that the testator intended separate and severable trusts for the beneficiaries named. Such an interpretation is amply sustained by the authorities.

. In the first place it is axiomatic that the intention of a testator should be determined (and here there can be no question what his purpose was) and that, having been determined, such a construction should be placed upon his language as to make such purpose effective. (*Roe* v. *Vingut,* 117 N. Y. 204; *Greene* v. *Greene,* 125 id. 506, 512; *Jacoby* v. *Jacoby,* 188 id. 124; *Hopkins* v. *Kent,* 145 id. 363; *Trask* v. *Sturges,* 170 id. 482; *Seitz* v. *Faversham,* 205 id. 197; *Matter of Hinchman,* 141 App. Div. 95; *Cammann* v. *Bailey,* 210 N. Y. 19; *Roosa* v. *Harrington,* 171 id. 341; *Matter of Tienken,* 131 id. 391; *Robinson* v. *Martin,* 200 id. 159; *Matter of James,* 146 id. 78; *Matter of Bump,* 234 id. 60; *Matter of Julliard,* 117 Misc. 642.)

Moreover, it is fundamental that where there is doubt as to the meaning of words or phrases used, or where an ambiguity exists, or where the provisions in the will are susceptible of two interpretations, one of which will sustain, and the other destroy such provisions, that construction is to be adopted which will uphold and sustain the will, because it is presumed to agree with the actual intention of the testator. " *The court struggles to preserve and surrenders to nothing short of obvious compulsion.*" (*Matter of Gallien, supra.*) Now the construction adopted above means the validating of that part of paragraph 7 referred to; whereas a different interpretation means a finding of intestacy and the consequent frustration of the intentions of the testator.

(2) The authorities are ample to sustain the holding that the language used intended four separate trusts for the benefit of the four beneficiaries named as annuitants. (*Matter of Gallien,* 247 N. Y. 195; *Matter of Trevor,* 239 id. 6; *Matter of Horner,* 237 id. 489; *Matter of Colegrove,* 221 id. 455; *Leach* v. *Godwin,* 198 id. 35; *People's Trust Co.* v. *Flynn,* 188 id. 385; *Buchanan* v. *Little,* 154 id. 147; *Hopkins* v. *Kent,* 145 id. 363; *Locke* v. *Farmers' Loan & Trust Co.,* 140 id. 135; *Bradhurst* v. *Field,* 135 id. 564; *Schermerhorn* v. *Cotting,* 131 id. 48, 61.)

There is no difficulty in determining the proportion of the residue to be set apart as sufficient to yield the periodic payments. Nor does the provision in paragraph 7, subdivision (a), viz.: " Should the provision for my brother William be insufficient in the opinion

of my executors, to support him, owing to his continued illness, my executors are hereby authorized to increase said allowance in their discretion," offer any serious obstacle, notwithstanding the contention made by the advocates urging the invalidity of the whole of paragraph 7, that this provision for William is a most certain index of an intention to create one single trust for four lives, for, (a) William is dead and as a practical matter there need be no further concern as to the increasing of his annuity, and (b) I construe the last quoted provision as to William to mean that *at the time of the setting up of the trust for William* the " executors " are authorized in their discretion to increase the income to an amount in excess of $1,250 by *setting aside a trust fund sufficient to produce the income determined by them.*

(3) We come now to the contention that the language used in the latter part of paragraph 7, which provides for the termination of the annuities or the trusts, clearly shows that the testator intended and has provided for a suspension of the power of alienation for longer than two lives, that is, for four lives. This is the language used:

" (b) The rest and remainder of my estate together with the accumulated income and profits thereon, shall, upon the decease (and the beneficiaries mentioned in Par. (' Seventh ' Sub. Div. (a) of my wife /be distributed among such charitable, benevolent and educational institutions and in such sums, as my beloved wife Dora may by her last will and testament designate, and in the event of her failure to make such designation, my estate shall be distributed between the institutions named in paragraph ' Third ' of this my Will, in amounts proportionate to the bequests therein stated."

If we give to the expression used a simple interpretation — a construction which does not strain, but on the contrary is a perfectly natural translation — the provision means that upon the death of testator's wife on the one side and of each of the other annuitants or beneficiaries severally, said trusts are to be terminated. Expressed in other language, this interpretation means that the trusts for the three annuitants, other than the wife of testator, are to endure for two lives, the life of the wife of the testator and the life of the annuitant in each instance, and secondly that the trust created for testator's wife shall terminate upon her death, being measured only by her own life. This construction is predicated upon the method of expression used by testator in said part of paragraph 7 last above quoted. It gives full force and effect to the facts: (1) That the widow is first named and that her name

stands apart from the names of the other annuitants; and (2) that the other annuitants are (a) grouped together, and (b) are set forth in an interpolation, and (c) are parenthesized. Such an interpretation gives full force and effect to the use of the marks for the parenthesis.

It is clear, therefore, that without resorting to the support of the authorities, which permit of the insertion or substitution of words or the transposing of phrases and clauses in order to give effect to the intention of a testator, the above reasonable and natural interpretation of the language used may be made, which will support and effectuate the validity of the provisions in question. If authorities be necessary, a long line of decisions is apt and ample for the instant case. (*Denison* v. *Denison*, 185 N. Y. 438; *Matter of Wardwell*, N. Y. L. J. June 11, 1914; *Matter of Farmers' Loan & Trust Co.*, 189 N. Y. 202; *Matter of Gallien*, 247 id. 195; *Matter of U. S. Trust Co.*, 86 Misc. 603; *Matter of Horner*, 237 N. Y. 489, 495, 496.) Under these authorities the word " severally " or the word " respectively " may be properly inserted at the end of the parenthesized phrase, thus making it read as follows: (and the beneficiaries mentioned in Par. " Seventh," subdiv. (a) *severally*) or (and the beneficiaries mentioned in Par. " Seventh," subdiv. (a) *respectively*). Thus the paragraph (b) clearly provides as the term or duration of the trusts for William Shapiro, Rev. Sholom M. Shapiro and Senia Klemens two lives, viz., the life of the widow and lives of the respective beneficiaries, and as the term or duration of the trust for the benefit of the widow her own life.

(4) There remain now but two questions to be determined before we draw our conclusion as to the validity of the entire paragraph 7, (a) the element of doubt injected by the fact that there may be in " All the rest, residue and remainder " of the estate an excess over the amount necessary to produce the annuities, and the consequent queries: (1) Shall said excess be considered under the terms of the will as part of the trust funds with the excess income passing to those presumptively entitled to the next eventual estate? or (2) shall it be distributed as under intestacy? or (3) shall it be held to be the property of those presumptively entitled to the next eventual estate, and thus effectuate testator's intention as to the ultimate disposition of the residuum? and (b) the second question arising out of the facts that William is dead and the trust created to produce his annuity is not ended until the death of the widow. These questions are readily disposed of. (1) The figures in the account indicate that there will be very little, if any, excess over the amount necessary to produce the annuities. If there should be any excess, it must be held that testator died intestate as to it;

and (2) the income of the trust for William must be paid from the time of his death to those presumptively entitled to the next eventual estate, viz., the beneficiaries named in paragraph 3, in the absence of the exercise by the widow. of the power of appointment given her.

Other questions of construction have been raised, but they were not included in the oral argument; nor were they included in the briefs of all the parties. A day will be set for the discussion of these questions.

Proceed accordingly.