In the Matter of IDA L. GALLIEN et al., as Executors of BRACE M. GALLIEN, Deceased, Respondents. WESLEYAN UNIVERSITY et al., Appellants.

Will — trust — provision for payment from income of monthly sum to foster daughter and balance to wife and on her death balance to be applied to support of incompetent son with direction for distribution "when the above payments shall cease"— word "when" equivalent to "as"— division to be made when payments severally cease — trust as to foster daughter fails but is valid as to residue — immediate division of principal not required if wife die before son — payments to beneficiaries postponed until death of survivor.

1. In construing a will by which the whole estate, after payment of debts, was given in trust, with direction to the trustee to pay from the income, monthly, a small sum to a foster daughter " so long as she may live," the balance of the income to be paid to testator's widow " as she may desire it," and, on her death, the balance of the income, or so much as may be necessary, to be expended for the " proper support and maintenance " of an incompe ent son, followed by the provision " when the above payments shall cease by reason of the deaths of the beneficiaries mentioned, I direct my trustee to pay " certain bequests, the word " when " in the sentence defining the time of distribution is equivalent to " as " and division is to be made when the payments severally cease and the deaths severally occur.

2. The trust for the foster daughter fails, and as to the capital reasonably necessary to produce the income payable to her, distribution is to be made upon the basis of intestacy, but the trust is valid as to the residue.

3. A contention that if the will is read as directing a division when payments severally cease, immediate division of the principal would

be necessary if the wife died before the son, cannot be sustained. No such result would follow. The income would then be carried over to the survivor by the express mandate of the will. Not till the death of the survivor would the time arrive when the payments to the beneficiaries as directed by the testator could be said to have ceased as to any portion of the trust estate.

*Matter of Gallien*, 221 App. Div. 409, reversed.

(Argued November 21, 1927; decided January 10, 1928.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered August 11, 1927, which affirmed a decree of the Albany County Surrogate's Court construing the will of Brace M. Gallien, deceased.

*Neile F. Towner* for Wesleyan University, appellant. The gift to Mabel Crans is an annuity and her life is not to be considered in the determination of the duration of the trust under decedent's will. Such trust is valid as its duration is not beyond the period fixed by statute. (*Seitz* v. *Faversham*, 205 N. Y. 202; *Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381; *Peoples Trust Company* v. *Flynn*, 188 N. Y. 393; *Matter of Hitchcock*, 222 N. Y. 73; *Hascall* v. *King*, 162 N. Y. 152; *Green* v. *Green*, 125 N. Y. 512; *Buchanan* v. *Little*, 154 N. Y. 147; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 151 App. Div. 167; *Orr* v. *Orr*, 147 App. Div. 753; 212 N. Y. 615; *Central Trust Co.* v. *Flack*, 177 App. Div. 504.) The bequest to Mabel Crans is severable. (*Matter of Horner*, 237 N. Y. 489; *Matter of Trevor*, 239 N. Y. 6; *Matter of Buttner*, 243 N. Y. 1.)

*Newton B. Van Derzee* for First Presbyterian Church, appellant. In construing a will an unlawful perpetuity will never be presumed when another construction is possible. (*Matter of U. S. Trust Co.*, 86 Misc. Rep. 603; 216 N. Y. 639; *Matter of Stanfield*, 135 N. Y. 292; *Turner* v. *Mather*, 86 App. Div. 172; *Buchanan* v. *Little*, 154 N. Y. 147; *Spencer* v. *Spencer*, 38 App. Div. 403; *Matter of Collins*, 144 N. Y. 522; *Matter of Trumbell*, 199

N. Y. 454.)   The legacy to Mabel Crans does not and could not affect the duration of the trust.   (*Peoples Trust Co.* v. *Flynn*, 188 N. Y. 385; *Crozier* v. *Bray*, 120 N. Y. 375; *Mee* v. *Gordon*, 187 N. Y. 400.)

*E. Crosby Kindleberger* and *Arthur O. Townsend* for Addison J. Gallien et al., appellants.   By considering the provision for Mabel Crans as an annuity and not as a trust for a third life, the clear intention of the testator can and will be carried out.   (*Robinson* v. *Martin*, 200 N. Y. 159; *Matter of Buechner*, 226 N. Y. 400; *Carrier* v. *Carrier*, 226 N. Y. 114; *Cammann* v. *Bailey*, 210 N. Y. 19; *Matter of Silsby*, 229 N. Y. 396; *Matter of Evans*, 234 N. Y. 42; *Kalish* v. *Kalish*, 166 N. Y. 368; *Matter of Horner*, 237 N. Y. 489; *Matter of Trevor*, 239 N. Y. 6; *Matter of Buttner*, 243 N. Y. 1.)   The provision for Mabel Crans is not so closely blended with the trust for the widow and the incompetent son as to become wholly void.   (*Matter of Perkins*, 245 N. Y. 478; *Matter of Chittick*, 243 N. Y. 304; *Matter of Buttner*, 243 N. Y. 1; *Schettler* v. *Smith*, 41 N. Y. 328; *Herzog* v. *Title G. & T. Co.*, 177 N. Y. 86; *Matter of Wilcox*, 194 N. Y. 288.)

*Arthur L. Andrews* for National Commercial Bank and Trust Company, as trustee.   Annuitants are not considered as persons to be taken into consideration in determining the number of measuring lives.   (*Buchanan* v. *Little*, 154 N. Y. 147; *Peoples Trust Co.* v. *Flynn*, 188 N. Y. 385; *Schermerhorn* v. *Cotting*, 131 N. Y. 48.)   The provision for Mabel Crans is severable from the provision for the widow and son.   (*Matter of Chittick*, 243 N. Y. 304.)

*Melvin T. Bender* and *Roland Ford* for Ida L. Gallien et al., as executors, respondents.   The trust for the benefit of Ida L. Gallien, Brace Goodwin Gallien and Mabel Crans unlawfully suspends the power of alienation.   (*Buchanan* v. *Little*, 154 N. Y. 147; *Hooker* v. *Hooker*, 41 App. Div. 235; 166 N. Y. 156; *Cochrane* v. *Schell*, 140 N. Y. 516;

*Herzog* v. *Title Guaranty & Trust Co.*, 177 N. Y. 86; *Matter of Trevor,* 239 N. Y. 6; *Crane* v. *Bennett*, 177 N. Y. 106.) Since the trust is invalid all the disposing provisions of the will must fail. (*Central Trust Co.* v. *Egleston,* 185 N. Y. 23; *Walter* v. *Walter*, 60 Misc. Rep. 383.)

*Herman J. Diekman* for Brace G. Gallien, respondent. The power of alienation is unlawfully suspended by the terms of the will of Brace M. Gallien. (*Matter of Horner*, 237 N. Y. 489; *Herzog* v. *Title Guarantee & Trust Co. of New York*, 177 N. Y. 86.) All of the paragraphs of the will are so connected that they constitute an entire scheme and since the trust is illegal and invalid all of the disposing provisions of the will must fail. (*Brown* v. *Quintard*, 177 N. Y. 75; *Knox* v. *Jones*, 47 N. Y. 389; *Hooker* v. *Hooker*, 166 N. Y. 156; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 N. Y. 525; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Whitefield* v. *Crissman*, 123 App. Div. 233; *Matter of Douglass*, 120 Misc. Rep. 193.)

CARDOZO, Ch. J.  Brace M. Gallien left a will disposing of an estate of the value of from $150,000 to $200,000. He was survived by his wife and by a son of unsound mind. The son had been cared for by one Mabel Crans, who is described as a foster daughter, but who was never adopted. She survived the testator only four days. By the will, which was written on a printed form, the whole estate, after payment of debts, is given to a trustee in trust " from the income thereof to pay monthly to our foster daughter, Mabel Crans, so long as she may live, the sum of fifty dollars ($50) per month for her personal use. The balance of the income of my estate is to be paid to my wife Ida L. Gallien as she may desire it. If my said wife, should be survived by our son Brace Goodwin Gallien, then the said balance of income or so much thereof as may be necessary is to be expended for his proper support and maintenance." Immediately

after this gift there is one of interests in remainder: " When the above payments shall cease by reason of the deaths of the beneficiaries mentioned, I direct my said trustee to pay the following bequests in the order mentioned dividing the residue of my estate into 'six equal parts." One-sixth is given to a brother; one-sixth to another brother; one-sixth in trust for a sister; the residue to a church and to Wesleyan University. The surrogate held that the trusts for the wife, the son and the foster daughter suspend the power of alienation and the absolute ownership for more than two lives in being at the death of the testator and that the entire will is void. In his view, the whole estate must have been kept within the trust if Mabel Crans had survived the other beneficiaries, though the income to be paid to her would be only $50 a month ($600 a year) out of a yearly income of $10,000 or more. The preservation of an idle trust might be incongruous with reason. Even so, the incongruity was unavoidable in view of the language of the will. The Appellate Division affirmed by a divided court.

" When the above payments shall cease by reason of the deaths of the beneficiaries mentioned," what is undisposed of shall be divided. The question is whether division is to be made when the payments severally cease and the deaths severally occur, or is to be postponed until all the deaths shall have occurred and all the payments shall have ceased. We reach the first of these results if we hold that the word " when " at the beginning of of the sentence may fairly be interpreted as equivalent to " as." Equivalent they often are (Murray, Oxford Dictionary, s. v. As, subd. III, 16; s. v. When, subd. II, c). The will in that view is to be construed as if it read: " As the above payments shall cease (or shall severally cease) by reason of the deaths of the beneficiaries mentioned," what is undisposed of shall be divided. Such a reading has support in the evidences of intention furnished by the will itself as well as in settled principles

of testamentary construction. One of the best known of those principles is that if two or more constructions are reasonably possible, the one that will sustain the validity of the will is to be preferred, generally speaking, to the one that will defeat it (*Roe* v. *Vingut*, 117 N. Y. 204, 212; *Phillips* v. *Davies*, 92 N. Y. 199; *Greene* v. *Greene*, 125 N. Y. 506, 512). The court struggles to preserve, and surrenders to nothing short of obvious compulsion. In the attainment of its end, it may " reject words and limitations, supply them or transpose them, to get at the correct meaning " (*Phillips* v. *Davies, supra;* cf. *Roome* v. *Phillips*, 24 N. Y. 463; *Miller* v. *Gilbert*, 144 N. Y. 68, 74). There are internal evidences of intention here to reinforce these general precepts. The will does not say that division is to be postponed until the entire trust shall terminate. It says that when there is cessation of " payments," there shall also be division. Certainly *some* payments will cease upon the death of wife and son. If the trust is to exist thereafter, it will cease to be bounded by the time when the income or any substantial part of it can continue to be paid in accordance with the trust provisions. "We are not to gather, from the language of the will, the absurd and destructive intention to continue a trust beyond the limit implied by its own nature and inherent character, unless compelled to do it by language which will admit of no other interpretation " (*Crooke* v. *County of Kings*, 97 N. Y. 421, 438; cf. *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135, 147). More significant, however, than any argument that has its roots in verbal criticism is the argument that is drawn from a survey of the consequences to be promoted or averted. By reading " as " for " when," or construing the cessation of payments as several or distributive rather than general or collective, we not only save the validity of the trust or at least the greater part of it. We cut an avenue of escape from consequences so unreasonable, we might even say so ludicrous, that a

sensible testator cannot be supposed to have intended
or approved them. The wife and the son were the
chief objects of solicitude. The care of them was the
primary purpose of the trust. The trifling provision for
the " foster daughter " was an incident and nothing
more. To tie up the whole estate in a continuing trust
after the death of wife and son in order to make these
petty payments, is a result so extraordinary, even if it
were lawful, that only words inexorably clear should
drive us to accept it. Acceptance will be the more
reluctant when one of the consequences accompanying
it is to make the will unlawful.

We hold, accordingly, that " when " in the sentence
defining the time of distribution is equivalent to " as."
If the will were so phrased, it would be the duty of the
trustee, upon the death of wife and son with the foster
daughter living, to retain within the trust an amount
adequate to make provision for the monthly payments
of fifty dollars, and to make division of the residue.
A severance of the trust to that extent would then be
an implied command (*Matter of Horner*, 237 N. Y. 489;
*Matter of Trevor*, 239 N. Y. 6; *Locke* v. *F. L. & T. Co.*,
140 N. Y. 135, 149; *Hopkins* v. *Kent*, 145 N. Y. 363).
A like duty exists under the will as it is written. We do
not say that such a severance will save the trust in its
entirety. It must fail even then as to the share directed
to be retained for the use of Mabel Crans, since there
are possible contingencies in which three lives might
have to elapse before the trust as to that share would end.
If the foster daughter were to die before the wife, the
income thus released would become an accretion to the
income payable to the wife, and in the event of her
death might be added to the income of the son. This
would transgress the statutory limit. On the other hand,
the trust for wife and son must terminate in any event
at the end of two lives, since their shares are to be severed
and distributed in fee if the daughter shall survive them.

We see no difficulty in determining the proportion of
the estate to be set apart as sufficient to yield the
monthly payments (*Bradhurst* v. *Field*, 135 N. Y. 564).
A different question would be here if the testator could
be supposed to have intended that the payments should
have the security of a trust enveloping the whole estate
regardless of its size. Such was the situation, *e. g.*, in
*Cochrane* v. *Schell* (140 N. Y. 516, 535). Here the direc-
tion to divide the principal when payments to the bene-
ficiaries shall cease is equivalent to a direction to make
whatever severance is necessary. Nor is there sub-
stantial ground for the belief that the failure of the
trust for Mabel Crans will so mutilate the will in the
essence of its plan as to make it better to drag down to
destruction at the same time the trust for wife and son.
Mabel Crans would not take anything if the will were
rejected altogether. She was not an heir or next of kin.
We have no such problem here as arises at times where
the failure of a separable trust will involve an unintended
discrimination between children or other relatives who
would take equally or proportionately if there were to be
intestate succession (*Benedict* v. *Webb*, 98 N. Y. 460,
466). Nothing is done here save what we may safely
presume that the testator would have wished the court
to do in the presence of such an emergency if he had
been able to foresee its happening (*Kennedy* v. *Hoy*, 105
N. Y. 134).

We are told that the will, if read as directing a division
when payments severally cease, would fail even then to
express the wish of the testator. The argument is made
that immediate division of the principal would be neces-
sary in that event if the wife died before the son. No
such result would follow. The income would then be
carried over to the survivor by the express mandate of
the will. Not till the death of the survivor would the
time arrive when the payments to the beneficiaries as
directed by the testator could be said to have ceased as

to any portion of the trust estate. Subtle refinements are unnecessary to give support to that construction. What is needed is nothing more unusual than a common sense appraisal of probabilities and meanings.

We hold that the trust for the foster daughter fails, that as to the capital reasonably necessary to produce the income payable to her, distribution is to be made upon the basis of intestacy, and that the trust is valid as to the residue.

Questions may arise hereafter in respect of the validity of some or all of the gifts to take effect as remainders when the trust is at an end. None of these questions was considered by the courts below. We leave them open now, to be dealt with hereafter by the surrogate or the Supreme Court if it shall be found expedient to answer them (*Matter of Farmers' Loan & Trust Co.*, 226 N. Y. 691).

The order of the Appellate Division should be reversed, and the proceeding remitted to the Surrogate's Court for the entry of a decree construing the will in accordance with this opinion, costs to be allowed to all parties appearing and filing briefs in this court, payable out of the estate.

LEHMAN, J. (concurring in part). There can be no question that the primary purpose of the testator in creating a trust of all his property was to make provision for his wife and son. A small fractional part of the income was to be paid to his foster daughter, Mabel Crans, so long as she lived. The balance was to be paid to the wife or son. The death of Mabel Crans would increase the income payable to them. Their death was not to affect payment to her. When the testator's wife and son both die the primary purpose of the trust fund will be complete. The question presented upon this appeal is whether the testator evidenced an intent that the trust fund or any part of it was to

continue after the primary purpose of its creation had ceased. The testator's desire to safeguard the payment of the sum of $50 a month to Miss Crans must have been strong indeed, if he intended that after the death of his wife and son, property with an income of $10,000 should be held in trust to effectuate that desire. If the testator had intended such result, we might look with confidence for some direction for the disposition of the large surplus of income remaining after the small payments to Miss Crans were made. Here such direction is ,wanting.

The testator's intent must be gathered from the language of his will. Strict grammatical construction may at times defeat actual intent. We must give effect to the sense which a testator attached to the words he has used. Here the testator has provided that the trust shall terminate " when the *above payments* shall cease by reason of the death of the *above-mentioned beneficiaries.*" If by the words I have italicised the testator indicated that the trust fund was to be held intact until Miss Crans died, though his wife and son may have died before, his indicated intention may not be disregarded. (*Cochrane* v. *Schell,* 140 N. Y. 516.) In that event the testator has acted foolishly. He has created a trust which is void in law and which even if valid would result in tying up his whole estate after the death of his wife and son for the sole purpose of safeguarding payment of a small proportion of the income to his foster daughter.

By the terms of the will, after the death of Miss Crans all the income became payable to the testator's wife and son. Only in the event that both died before Miss Crans could the trust, under any possible construction of the will, continue after the payment of the balance of the income to the wife and son ceased. We may assume with a reasonable basis for the assumption that the testator did not realize that a contingency might arise in which the property would be held merely to safeguard payment of $600 a year to Miss Crans. Otherwise he

would have made some provision for the disposition of the balance of income, amounting to $9,400. Here we have at least a clue to the actual intention of the testator in using the words "above payments" and "above-mentioned beneficiaries."

After payment of $50 to Miss Crans, so long as she shall live, payment of the balance was to be made to the wife. If the testator's son survived the wife, the balance of income was to be expended for him. Payment of the balance of the income to the beneficiaries entitled thereto was the dominant purpose of the trusts. Payments to wife and son are directed, and the beneficiaries are mentioned in the two sentences immediately preceding the direction for the termination of the trust "when the above payments shall cease by the death of the beneficiaries mentioned." To me it seems clear that the testator in using these words had in mind only the payments last directed to the last-mentioned beneficiaries. Under that construction, payments to Miss Crans would still be continued with adequate safeguards. (*Buchanan* v. *Little*, 154 N. Y. 147.) Other construction requires that we impute to the testator ignorance of the law and lack of ordinary foresight.

The order of Appellate Division should be reversed.

KELLOGG, J. (dissenting). In order to give effect to an intention of the testator, not expressed but assumed to exist, the court proposes to re-word one sentence of the will to read as follows: " As the above payments shall cease (or shall severally cease) by reason of the death of the beneficiaries mentioned, I direct my said trustee to pay the following bequests in the order mentioned, dividing the residue of my estate into six equal parts." Further reduced, but with the same meaning, the sentence would read " As the above payments shall severally cease by reason of the death of the beneficiaries mentioned, I direct my trustee to pay the following bequests." That

would mean that, at the death of the foster daughter, the principal sum, furnishing to her a life income, must then be distributed to remaindermen.  It would further mean that, at the death of the wife, the principal sum, furnishing to her a life income, must then be similarly distributed.  But this verbal weapon would overshoot the desired mark.  It would leave in the trust no sum from which there might be paid an income to the son, as provided elsewhere in the will.  Even the authors of the improved sentence would not approve that result. What .they seek is a severance of the capital sum into two parts, one to be devoted to the uses of the foster daughter, the other to be devoted to the uses of both the wife and son.  With this end accomplished neither fund would remain in a state of trust for more than two lives.  But how can this be achieved by the phrase " as the above payments shall severally cease? "  If that means aught, it means " as the payments to each of the several persons named shall cease " there shall be division of the principal *pro tanto.*  The revised sentence provides no line of cleavage between the daughter's fund on the one hand, and upon the other the fund providing income for the wife and son.  The truth is that the will ordains division at the end of the three lives and not sooner. When the payments to the beneficiaries shall cease by reason of " their deaths," that is, the deaths of the three, then, and then only, is the trustee directed " to pay the following bequests in the order mentioned, dividing the residue of my estate into six equal parts." In my judgment the testator attempted to create a trust to endure for a period longer than two lives and, therefore, the will should not stand.  I, therefore, dissent.

POUND, CRANE, ANDREWS and O'BRIEN, JJ., concur with CARDOZO, Ch. J.; LEHMAN, J., votes for reversal in separate opinion; KELLOGG, J., dissents in opinion and votes to affirm.

Ordered accordingly.