First National Bank and Trust Company of Yonkers, Respondent, *v.* Edith S. Palmer, Individually, Respondent, Impleaded with Richard Palmer and Another, Infants, by Albert Ritchie, as Guardian ad Litem, Appellants, and Edith S. Palmer and Another, as Executors, etc., of Leslie R. Palmer, Deceased, Defendants. (Actions Nos. 1 and 2.)*

Second Department, June 13, 1932.

*Albert Ritchie*, guardian *ad litem*, for the appellants.

*Frederick P. King* [*John R. Bushong* with him on the brief], for the respondents.

Kapper, J. In issue here are two deeds of trust made on February 7, 1923. The parties to both deeds are the same with

*Modfg. 141 Misc. 692.

a single exception. The makers of the instruments are Edith S. Palmer, party of the first part, the plaintiff, party of the second part, and Edith Palmer Hart, party of the third part. The persons affected by the instruments are as follows: Leslie R. Palmer, since deceased, and his wife, Edith S. Palmer; their two children, Richard and Wayne, and, lastly, Leslie's sister, Edith Palmer Hart, since deceased, aunt of the two boys who, at the time of the making of these instruments, were aged four and three years respectively. In one of the deeds Richard is included as a beneficiary; in the other Wayne is named, instead, as one of the included beneficiaries.

A consideration of the provisions of one deed will suffice for both for the reason that a determination as to one, because of the identical language and provisions, will govern both. The settlor or creator of the trust was Edith S. Palmer, Leslie's wife, and the consideration moving to her to create the trusts was the transfer of certain assets owned by Edith Palmer Hart to her brother Leslie, the settlor's husband.

The subject of each trust is an undivided one-half interest in a mortgage of $177,600, ownership of the whole of which was in the settlor. Each instrument in its inception recites: " Whereas the party of the first part desires to create a trust fund for the use, support and benefit of the persons hereinafter mentioned." The only persons " hereinafter mentioned " as beneficiaries are the settlor's sister-in-law, Edith Palmer Hart, the settlor's husband, Leslie R. Palmer, and the two sons of the settlor, each respectively named in the two separate identical instruments. Taking the instrument in which Wayne is named, the trustee bank was to possess the undivided one-half of said mortgage: " * * * in trust, nevertheless, during the natural lives of said Edith Palmer Hart and of Wayne Palmer, son of said Leslie R. Palmer, or the survivor of them, for the following uses and purposes, namely:

" To hold the said securities and property and to collect and receive the interest, income and profits thereof, and, after deducting all proper charges and expenses, to pay over said interest, income and profits as follows:

" (1) To Edith Palmer Hart the whole of said interest, income and profits as long as she may live, provided they do not exceed the sum of Fifteen Hundred Dollars ($1,500) a year; if they exceed the said sum of Fifteen Hundred Dollars ($1,500) a year, to pay over to said Edith Palmer Hart the sum of Fifteen Hundred Dollars ($1,500) a year, and out of the remainder of the income to pay premiums on policies of insurance on the life of Leslie R. Palmer for the benefit of said Wayne Palmer, son of Leslie R. Palmer, said policies being in the sum of Thirty Thousand Dollars ($30,000),

and the amount thereof to be added to this trust fund upon the death of Leslie R. Palmer, provided this trust be then in existence; to pay the remainder of the said interest, income and profits to Leslie R. Palmer during his life, provided this trust be in existence during said period; if the said Leslie R. Palmer should die before said Edith Palmer Hart, to pay over the remainder of such interest, income and profits to said Wayne Palmer if he is living at such death of Leslie R. Palmer, and, in case of the death of both Leslie R. Palmer and Wayne Palmer prior to the death of Edith Palmer Hart, to pay over the said remainder of such interest, income and profits to the lineal descendants of said Wayne Palmer, if any, *per capita.*

" (2) Upon the death of said Edith Palmer Hart, prior to that of the said Wayne Palmer, and if the said Leslie R. Palmer is living at the time of such death of Edith Palmer Hart, after paying insurance premiums as aforesaid, to pay over the remainder of said interest, income and profits to Leslie R. Palmer during the life of said Wayne Palmer; if said Leslie R. Palmer is dead at the time of such death of Edith Palmer Hart, to pay the whole of said interest, income and profits to Wayne Palmer during his life."

Provision is then made for a revocation of the trust during the lives of Edith Palmer Hart and Leslie R. Palmer, who alone were empowered to revoke the trust, but as they are both now dead the trust stands as an irrevocable one. The question is as to the distribution of the income from the trust as it affects these infants.

As matters stood at the time of the making of the trust, with all of the parties living, Edith Palmer Hart was to receive the sum of $1,500 a year from the income of the fund " as long as she may live; " next, there was to be taken from the balance of the income sufficient moneys to pay the premiums on life insurance policies on the life of Leslie " for the benefit of said Wayne Palmer, son of Leslie R. Palmer, said policies being in the sum of Thirty Thousand Dollars ($30,000), and the amount thereof to be added to this trust fund upon the death of Leslie R. Palmer." The remainder of the income was to be paid to Leslie R. Palmer during his life.

Now, to take up the contingencies:

1. If Edith Palmer Hart and Wayne survived Leslie, said Edith would continue to receive her $1,500 a year and Wayne would get the balance.

2. If said Edith and Leslie survived Wayne, she would get her $1,500 a year and Leslie would get the balance.

3. If said Edith survived both, she would get her $1,500 a year and the remainder would go " to the lineal descendants of said Wayne Palmer, if any, *per capita.*"

4. If Leslie and Wayne survived said Edith, the balance of the income, after payment of the life insurance policies, was to go to Leslie " during the life of said Wayne Palmer."

5. If Leslie survived both, there is no provision for the disposition of the income other than contained in the preceding contingency.

6. If Wayne survived both, he would receive " the whole of said interest, income and profits " during his life " if said Leslie R. Palmer is dead at the time of such death of Edith Palmer Hart." No *express* provision is made for Wayne if Edith Palmer Hart predeceased Leslie R. Palmer. Yet this last contingency is what actually did occur. Edith Palmer Hart died June 14, 1928. Leslie R. Palmer died August 31, 1930. Wayne Palmer is still alive.

In the absence of an expressed provision covering this contingency, the plaintiff trustee commenced the present actions to settle its accounts and for a construction of the two trust agreements. The learned Special Term held that words could not be supplied by the court to cover the contingency for which the agreement itself did not provide, and, therefore, the settlor (the mother of the infants) was entitled to the income " until such time as there is someone in existence who is entitled to the next eventual estate," as provided by section 63 of the Real Property Law.

A reading of the trust agreements shows that the dominant purpose of its makers was, *first*, to give Edith Palmer Hart a life interest of $1,500 a year — this is clearly expressed throughout; *second*, to give the balance of the income to Leslie for life, after payment of insurance premiums; *third, to give the income of the trust to Wayne during his life upon the death of his father and aunt.* Two trusts were created, palpably in the interest of each of the boys; premiums on insurance policies on Leslie's life, taken out " for the benefit " of said infants, are stated in the agreement to be paid for out of the income; Wayne upon the father's death gets the income over and above the $1,500 a year paid to Edith; he gets the entire income upon Edith's death; the trust itself is measured by his life; his descendants are primarily entitled to the corpus upon the termination of the trust. Yet, although it is clear enough that if Leslie had died before Edith Palmer Hart, Wayne would have received the income for life, she (Edith) having died before Leslie, Wayne receives nothing *and never will;* instead, the settlor, who was never intended as a beneficiary, is the recipient of the income until such time as Wayne might have issue, in which event the issue, who were never contemplated in any other status than as remaindermen, will receive the income instead of the settlor.

The ability of the courts to right a situation of this kind, so

unmistakably the result of error, should not, in my opinion, be underestimated.

When the clear intention of the maker of an instrument has been determined " it is to be effectuated unless forbidden by law " (*Gillet* v. *Bank of America*, 160 N. Y. 549, 555; *Matter of Buechner*, 226 id. 440, 444), and to prevent consequences apparently unreasonable and remote from the makers' minds, the court will surrender " to nothing short of obvious compulsion " to construe its meaning in accordance with the " internal evidences of intention " therein expressed. (*Matter of Gallien*, 247 N. Y. 195, 200, 201.)

The basic question at bar is: Is there sufficient evidence from the instrument itself that the makers intended Wayne, upon his survival of Edith and Leslie, to have the income for life? The entire tenor of the instrument seems to make that plain by implication. The draftsman may have muffled but he did not stifle the intention of the makers in that respect. A faulty instrument puts the court on the *qui vive* to effectuate the intention of the maker if at all possible. (*Matter of Allen*, 111 Misc. 93, 99; affd., on that opinion, 202 App. Div. 810; modfd., but not so as to affect the result in principle, 236 N. Y. 503.)

This leads to a consideration of the character of the shortcoming of the instrument. In providing for the contingencies relating to payment of the income, the draftsman considered the makers' intentions in two aspects. The entire first disposition of income considers the possibilities eventuating Edith Palmer Hart's survival of Leslie R. Palmer and of Wayne Palmer. Paragraph 2 apparently contemplates the contingencies arising upon the death of said Edith Palmer Hart by first taking care of the contingency of Leslie and Wayne both surviving her. In the one sentence of this paragraph the trend suddenly veers from the possibilities of Edith Palmer Hart's predecease and provides: " if said Leslie R. Palmer is dead at the time of such death of Edith Palmer Hart, to pay the whole of said interest, income and profits to Wayne Palmer during his life."

Consideration had already been given in the instrument to the possibility of Leslie's death prior to that of Edith Palmer Hart by providing that in that event Wayne was to receive the income subject to the income payable to Edith.

If the contemplation of Edith's predecease had been logically carried out in paragraph 2, the above-quoted provision by a simple transposition of the names Leslie R. Palmer and Edith Palmer Hart would have taken care of the only contingency not at all touched upon by the draftsman, namely: " if said Edith Palmer Hart is dead at the time of such death of Leslie R. Palmer, to pay the

whole of said interest, income and profits to Wayne Palmer during his life." Such a provision rounds out the instrument, which, although in some respects imperfectly expressed, would nevertheless then have considered all of the contingencies that were possible of occurrence and have taken care of the contingency which did arise in conformity with the evident intention of its makers.

A frequently stated principle, applied in the construction of testamentary provisions (equally applicable to deeds of trust), is that "the court may reject words and limitations, supply them or transpose them to get at the correct meaning." (*Phillips* v. *Davies*, 92 N. Y. 199, 204; *Matter of Farmers' L. & T. Co.*, 189 id. 202, 207; *Matter of Gallien*, 247 id. 195, 200.) While the earlier pronouncement authorized transposition "in order to ascertain and determine the intent of the testator" (*Matter of Farmers' L. & T. Co.*, *supra*), the later ruling is expressed in *Matter of Tamargo* (220 N. Y. at p. 231), as follows: "While a court may transpose a phrase of a will, as the Appellate Division has undertaken in this case, there must be something in the will which makes it clear and certain that the meaning and expressed intention of the testatrix necessitate the transposition. The transposition may not be made for the purpose of creating an intention. Courts have no power to create a testamentary disposition which is neither expressed nor necessary to be implied."

A striking illustration of the power of transposition is contained in *Phillips* v. *Davies* (*supra*), where the clause of the will under consideration provided: "'I hereby nominate and appoint my beloved husband, John D. Phillips, and my sons, Louis, Isaac, Henry J. and Asher L., executors of this my last will and testament, hereby authorizing such and whichever of them as shall qualify, and the survivor and survivors of them to act in the like manner and with like effect as if they or he alone had been named as such executor, *and during the lifetime of my said husband*, my said executors, and such and whichever of them as shall act are authorized and empowered, *by and with the consent of my said husband*, to sell and dispose of any part of my estate, real and personal, not specifically bequeathed,' etc." And the court say: "If the two expressions we have italicized belong together, and have been separated by accident or mistake; if they may be brought together by transposition, and if then they may be enclosed in brackets and read parenthetically, the construction of the courts below will be reached, and what seems inevitably to have been the purpose and intention of the testatrix will be preserved. The material part of the clause in question would then read thus, viz.: 'and my said executors, and such and whichever of them as shall

act are authorized and empowered (*during the lifetime of my said husband, by and with the consent of my said husband*) to sell and dispose of any part of my estate, real and personal,' etc. If such was the real meaning and intention of the testatrix; if an examination of the whole will forces that conviction; if its plain and definite purposes are endangered by inapt or inaccurate modes of expression; and we are sure that we know what the testatrix meant, we have a right and it is our duty to subordinate the language to the intention. In such a case the court may reject words and limitations, supply them or transpose them, to get at the correct meaning."

Thus it was held that there was conferred upon the executors a power of sale extending beyond the life of the husband, during his life to be exercised by his consent, but thereafter continuing to exist. Implications of disposition, although not expressed, are illustrated in *Matter of Hoffman* (201 N. Y. 247); *Bishop* v. *Bishop* (257 id. 40); *Matter of Schriever* (221 id. 268); *Williams* v. *Petit* (138 App. Div. 394), and *Marsh* v. *Hague* (1 Edw. Ch. 174).

In the case at bar we think the intention of the makers of the trust agreements to constitute the infant children of the settlor, Wayne Palmer and Richard Palmer, the beneficiaries of the income upon the death of both Edith Palmer Hart and Leslie R. Palmer, clear and unmistakable. The respondents' brief states that the trust agreements " provide for four specific contingencies, *two of which are in fact the same* although differently expressed." After setting forth the first and second contingencies, the brief reads (italics are those of counsel):

" (3) ' *If the said Leslie R. Palmer should die before the said Edith Palmer Hart,*' the income is to be paid to the son.

" (4) ' *If said Leslie R. Palmer is dead at the time of such death of Edith Palmer Hart,*' the income is to be paid to the son.

" It will be observed that of the above contingencies, those enumerated as (3) and (4) are alike and reiterate the event, to wit: *the death of Leslie R. Palmer before that of Edith Palmer Hart,* as the contingency upon which Richard shall be entitled to income. Leslie R. Palmer, however, *died after his sister* and in this contingency no express direction for the payment of income is found in the trust agreements."

It is not seriously contended that the practical duplication of the third and fourth contingencies was not inadvertence, nor that the infants should not have the income after the death of their father and aunt, the argument seemingly resting upon the claim that the trust deeds do not say in expressed words that the right to such income is dependent upon the death of the father and aunt

irrespective of the order in which the father and aunt predecease each other. Considering the declared purpose of the instruments " to create a trust fund for the use, support and benefit of the persons hereinafter mentioned," coupled with other internal evidence of intention, I am of opinion that there is contained in the instruments language fraught with meaning and such expressed intention as to justify the transposition in paragraph 2 of the names of Leslie R. Palmer and Edith Palmer Hart, which will then read that " if said Edith Palmer Hart is dead at the time of such death of Leslie R. Palmer, to pay the whole of said interest, income and profits to Wayne [or Richard] Palmer during his life."

In the case of *Central Union Trust Co.* v. *Trimble* (255 N. Y. 88) there was an effort to pay excess income under a trust to the executors of the settlor, where a portion of the income was payable to one Beeckman with remainder of the income to the settlor for life, the entire income to be paid to the settlor for life upon Beeckman's death. No expressed provision was made as to the disposition of any excess income if the settlor died first, which event happened. There was nothing in the trust agreement indicating that the settlor's estate should be a beneficiary after his death. In those circumstances, it was held that the surplus income during Beeckman's life, surviving the death of the settlor, should go to the settlor's son " as the person presumptively entitled to the next eventual estate." The case does not hold that intention " legitimately to be implied from the language used when construed in the light of the surrounding circumstances " is to be ignored; on the contrary, it is emphasized, although omission of any purpose in the instrument to constitute the settlor or his estate beneficially interested after the settlor's decease was said to be " obvious."

I advise that the judgments be modified so as to provide that the entire income of the respective funds be paid to the infants during their lives, and as so modified affirmed, in so far as appealed from, with costs, payable out of the trust income, to such parties as have filed briefs.

Present — LAZANSKY, P. J., KAPPER, HAGARTY, CARSWELL and DAVIS, JJ.

Judgments modified so as to provide that the entire income of the respective funds be paid to the infants during their lives, and as so modified unanimously affirmed, in so far as appealed from, with costs, payable out of the trust income, to such parties as have filed briefs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.