TRUST OF NORA GRACE, DECEASED UNDER DEED OF TRUST DATED APRIL 4TH, 1930 BY JOSEPH P. GRACE. JOSEPH P. GRACE AND JOSEPH P. GRACE, JR., TRUSTEES, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18329.   Promulgated October 24, 1949.

*Gerard L. Carroll, Esq.*, for the petitioners.
*John J. Madden, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: This proceeding involves deficiencies in income tax in the amounts of $3,287.24 and $4,216.79 for the calendar years 1942 and 1943, respectively.

The issues presented are:

(1) Whether the trust created on April 4, 1930, for the benefit of Nora Grace, became four trusts on her death in 1935.

(2) Whether the respondent's notice of deficiency was timely.

In the alternative, if the answer to the first issue is in the negative, is the proposed deficiency to have credited against it the taxes paid by petitioners on the theory that separate trusts had been created in 1935?

All the facts have been stipulated and are so found.   The material facts may be summarized as follows:

On April 4, 1930, Joseph P. Grace, a resident of the State of New York, executed a deed of trust for the benefit of his daughter, Nora Grace.   Joseph P. Grace and Janet Grace, his wife, were trustees. Nora Grace was born on February 21, 1910, and died August 25, 1935, never having married and leaving no lawful issue.   Paragraph first of the deed of trust provides *inter alia* as follows:

\* \* \* In the event that said NORA GRACE should die leaving no lawful issue her surviving, the property constituting the principal of the Trust for her benefit, shall be divided into as many equal shares as there are children of the Donor now living who shall also then be living, or if dead, survived by lawful issue, and one of said shares shall be paid over to the lawful issue of each deceased child per stirpes.   The remaining shares shall be held by the Trustees, one share for the benefit of each child of the Donor now living who shall also then be living, upon the following terms and conditions:

If said child shall be under the age of twenty-one (21) years, to collect and receive the dividends, rents, issue, income and profits thereof and to apply the whole or any part of the same toward the support, maintenance and education of such child, in such manner as the Trustees in their absolute discretion shall deem proper, and to invest, reinvest and accumulate any unapplied income and profits, and upon such child attaining the age of twenty-one (21) years, to convey, assign, transfer and pay over to such child all of said accumulated income.

From and after the time when said child shall attain the age of twenty-one (21) years, to collect and receive the dividends, rents, issue, income and profits of such share and pay over the same to the said child.

Upon the death of the said child, the Trustees shall convey, assign, transfer and pay over the principal of such share, together with all undistributed or accumulated income thereon, to the lawful issue of said child in equal parts per stirpes. In the event of the death of said child leaving no lawful issue him or her surviving, the Trustees shall convey, assign, transfer and pay over the principal of such share, together with all undistributed or accumulated income thereon, to the brothers and sister of said child and the issue of any deceased brother or sister, in equal parts per stirpes.

Paragraphs fourth, fifth and sixth of the deed of trust read as follows:

FOURTH: It is hereby expressly understood and agreed that the Donor shall have the right at any time, and from time to time to convey, assign, transfer, deliver or deposit with the Trustees additional securities or property which thereupon shall become a part of the Trust Property and subject in every respect to the Trust and to the terms, conditions and limitations of this agreement.

FIFTH: The Trustees hereby acknowledge receipt of the securities described in said Exhibit "A" hereof, and hereby accept the trusts in this Agreement declared and provided, and agree to perform the same upon the terms and conditions hereinabove set forth.

SIXTH: The trust hereby created shall be deemed a New York trust and shall in all respects, be governed by the laws of the State of New York, and all judicial accounts of the Trustees shall be had in the courts of the State of New York,

The other children of the settlor who were living at the time the trust was created and who survived the death of Nora Grace were Joseph P. Grace, Jr., Michael P. Grace, II, Charles Macdonald Grace, and Janet Maureen Grace. The first two named children had attained the age of 21 years prior to the year 1942, but the latter two children were still minors during the years 1942 and 1943. All four children were living during the taxable years.

The amounts accumulated pursuant to the trust instrument during the taxable years involved for the benefit of the two minor beneficiaries were equal. During the taxable years the trustees distributed identical sums to Joseph P. Grace, Jr., and Michael P. Grace, II.

Janet Grace died on December 31, 1937, and Joseph P. Grace, Jr., was appointed successor trustee.

On the premise that four trusts had been created, fiduciary income tax returns for each of such trusts were filed for each of the respective taxable years, 1942 and 1943, by "J. P. Grace and J. P. Grace, Jr.,

Trustees under Deed of Trust dated 4/4/1930 (re: Nora Grace)." On the premise that one and not four trusts had been created, the respondent taxed to petitioners, as trustees of that one trust, the net income reported on the fiduciary returns for the taxable years filed for the purported two trusts for Charles Macdonald Grace and Janet Maureen Grace, respectively. The taxes shown to be due on the returns filed under the name of Joseph P. Grace and Joseph P. Grace, Jr., Trustes under Deed of Trust dated 4/4/30 for Charles Macdonald Grace (re: Nora Grace) and under the name of Joseph P. Grace and Joseph P. Grace, Jr., Trustees under Deed of Trust dated 4/4/30 for Janet Maureen Grace (re: Nora Grace) for the calendar years 1942 and 1943 were paid.

The primary question presented is whether, by the deed of trust of April 4, 1930, the settlor intended a single trust, as contended by the respondent, or multiple trusts, as urged upon us by petitioners. The respondent argues that, in determining whether one or more trusts have been created, the controlling factor is the intention of the grantor. *Huntington National Bank, Trustee* v. *Commissioner*, 90 Fed. (2d) 876. In determining that intention, at least where, as here, there was no testimony *extra* the trust bearing on the settlor's intention, we must look to the instrument itself. We are here concerned with a New York trust which the settlor specifically provided was to be governed by the laws of the State of New York. If we construe the trust deed as creating a single trust embracing several beneficiaries, we think there is a suspension of the absolute power of alienation for a longer period than two lives in being at the time of its creation.[1] In *Oliver* v. *Wells*, 254 N. Y. 451; 173 N. E. 676, the New York Court of Appeals construed a testamentary trust similar in its pertinent features to the trust deed here involved. In that case Wells devised his residuary estate in trust for the benefit of his wife during her lifetime, and the principal on her death was to be divided into 15 equal parts. One-fifteenth of the income was to be paid to a

---

[1] Section 11 of the Personal Property Law of the State of New York provides as follows:
"Suspension of Ownership.

"The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition, or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator; except that a contingent gift in remainder may be made on a prior gift in remainder, to take effect in the event that the persons to whom the first remainder is limited die under the age of twenty-one years, or on any other contingency by which the interest of such persons may be determined before they attain full age. For the purposes of this section, a minority is deemed a part of a life, and not an absolute term equal to the possible duration of such minority. Lives in being or a minority in being shall include a child begotten before the creation of the estate but born thereafter. In other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

[Note amendment by Laws of New York, 1929, ch. 229, § 18, effective 9/1/30, changed to read as above. Difference not material here. See Laws of New York, 1897, ch. 417, § 2.]

nephew, one-fifteenth to his wife's niece, twelve-fifteenths to his wife's grandniece, and one-fifteenth to another grandniece of his wife. In the event of the death of any beneficiary, the income from such beneficiary's share was to be paid to the survivors, and not until the death of the last survivor was the principal to be distributed and so released from the trust. The court held:

The *trusts* established by the testator after the trust for the benefit of his wife are unlawful in so far as they provide that upon the death of any of the beneficiaries, the income from the share of the one so dying shall be paid to the survivors. The effect of that provision might be to continue the trust in respect of any share for a period of four lives. No reason is perceived, however, why the *trusts* shall fail in their entirety. The primary *trusts* for the benefit of nephew, niece, and grand nieces may stand, and the secondary trusts for the survivors be severed and rejected. The principles governing this process of division have been expounded so fully in recent cases that there is no occasion to restate them. *Matter of Horner's Will*, 237 N. Y. 489, 143 N. E. 655; *Matter of Trevor's Will*, 239 N. Y. 6, 145 N. E. 66; *Matter of Gallien*, 247 N. Y. 195, 160 N. E. 8; *Matter of Durand's Will*, 250 N. Y. 45, 164 N. E. 737. * * * [Emphasis supplied.]

The rule recognized by the New York courts, where the trust instrument discloses a primary purpose to create several trusts, is to simply cut off the illegal portion, unless to do so would violate the intention of the settlor. *In re Colegrove's Estate*, 221 N. Y. 455; 117 N. E. 813. The test is whether the principal can be separated into distinct shares. *Leach* v. *Godwin*, 198 N. Y. 35; 91 N. E. 288. An entire estate may be held in trust for one beneficiary for life and on his death may be divided into shares for a second separate life. *Vanderpoel* v. *Loew*, 112 N. Y. 167; 19 N. E. 481.

Where two or more constructions of an instrument are possible, the one that will sustain its validity is to be preferred to the one that will defeat it. An intent to violate the expressed public policy of the state as declared by statute will never be presumed unless such a result is unavoidable. *Rookwood Pottery Co.* v. *Commissioner*, 45 Fed. (2d) 43, 45; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84; 155 N. E. 58.

We think that in directing the trust principal to be divided upon the death of the settlor's daughter Nora, and further held in trust, the settlor clearly intended to create separate trusts for his children living at his daughter's death. Such a construction sustains the validity of the trust instrument.

We therefore conclude that it was the intention of the settlor to create multiple trusts out of the principal following the death of the first life tenant, and not a single trust with several beneficiaries. The respondent's contention is overruled. In so concluding it is unnecessary to pass upon the other issues raised by petitioners.

*Decision will be entered for the petitioners.*