William T. Collins, S.
This is a proceeding- for the settlement of the account of the temporary administrators and executors and for construction of the will. The principal objections are those addressed to the account by four former employees of the deceased’s private banking firm. It is their contention that the deceased, in consideration of their permitting themselves to be insured in favor of the company, agreed to leave each a legacy in the amount of $15,000. The executors, conceding that negotiations for an agreement looking toward that end were in progress prior to the death of the deceased, insist that it was never consummated and that the contract fails under the Statute of Frauds, because it was never reduced to writing.
The testimony offered in support of the claim may be summarized as follows: The deceased consulted his insurance adviser, Mr. Griulio Pontecorvo, and stated to him that he contemplated taking out policies insuring the lives of the four objectants in the sum of $15,000 each, naming* his banking firm as beneficiary. He also stated that he intended, so Mr. Pontecorvo testified, to cause himself to be insured in like amounts in favor of each of the four employees. Subsequently it was established that the deceased was uninsurable and the original plan was accordingly abandoned. However, each of the claimants submitted to examinations, which were successfully passed, and policies covering their lives were issued, the first premium in each case being paid by the beneficiary company. Mr. Per era thereafter consulted his attorney, Mr. Thomas A. Sully, in connection with the plan and from his hospital bed issued written instructions which were not signed and which did not set forth the complete terms of the suggested arrangements. Acting in *1045 accordance with his instructions Mr. Sully thereafter wrote a letter to Mr. Pontecorvo enclosing a document described as “ a copy of a draft of a proposed agreement between The Perera Company and certain of its employees, which I have drawn up in accordance with instructions received by me from Mr. Gruido Perera. ’ ’ The letter went on to say: “I will greatly appreciate it if, after you have had an opportunity of considering the provisions of the enclosed proposed contract, we can make an appointment at our mutual convenience to discuss the same.” The draft agreement, as it was called, set forth in full the terms of a contract which would have bound the estate to the payment of $15,000 to each of the claimants upon the death of the decedent, in consideration of the objectants permitting themselves to be insured in favor of their employer.
It is the contention of the objectants that this agreement falls outside the prohibition of the Statute of Frauds (Personal Property Law, § 31, subds. 1, 7) because it is said that the letter and set of instructions constitute a writing evidencing the making of a completed oral contract. It is not disputed that the objectants each submitted to the physical examination required by the issuing company, that the policies were issued and that the initial premiums were paid by the deceased’s company prior to his death. Had any of the claimants died at that time the proceeds of the insurance would have been paid to the beneficiary therein named. However, in order for the objectants to succeed it must be shown that the writing upon which they relied, whether it consisted of one or more separate documents, contained a full statement of the agreement of the parties, signed by the deceased, or his agent, as the person to be charged. (Crabtree v. Elizabeth Arden Sales Corp., 305 N. Y. 48.) In that case the court said (pp. 55-56): ‘ ‘ None of the terms of the contract are supplied by parol. All of them must be set out in the various writings presented to the court, and at least one writing, the one establishing* a contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed. Parol evidence — to portray the circumstances surrounding the making of the memorandum — serves only to connect the separate documents and to show that there Avas assent, by the party to be charged, to the contents of the one unsigned. If that testimony does not convincingly connect the papers, or does not show assent to the unsigned paper, it is Avithin the province of the judge to conclude, as a matter of law, that the statute has not been satisfied. ’ ’
*1046 In the light of the rule so stated the question becomes very-narrow. Did the letter of the attorney, enclosing the ‘ ‘ proposed agreement,” coupled with the set of instructions, constitute a writing sufficient to take the case out of the statute? The objectants insist that it was a misdescription for the attorney to refer to the document which he enclosed in his letter as a “ proposed agreement.” They point to the fact that performance on their part had been completed and assert that had any of them died on or about that time the benefits anticipated by the deceased in the making of his agreement would have been enjoyed by him.
It is conceded that the writing will satisfy the conditions of the statute if it is signed by an agent and Mr. Sully was admittedly acting- in that capacity. However, the terms of his agency and the restrictions limiting his authority did not permit him to sign an agreement imposing liability upon the deceased and it is in the failure to meet this condition that the objectants are confronted with the defeat of their claim. As Mr. Sully stated in Ms letter, he had been instructed ‘ ‘ to draw up ’ ’ such an agreement, but there is nothing in the record to which the objectants can point that can in any way establish his authority to execute the agreement and so impose the obligation of performance upon his client. The objections are accordingly dismissed.
Paragraph Ninth of the will provides in part as follows: “ I give, devise and bequeath to my Trustees, hereinafter named, a sum equal in value to fifty (50%) percent of the value of my gross estate, after payment of all estate and inheritance taxes upon said fifty (50%) percent thereof, wMch I hereby direct shall be paid out of my residuary estate ”. The petitioners insist that the testator in fact intended to create a trust consisting of 50% of his “ -adjusted gross estate ” and that the word “ adjusted ” was inadvertently omitted from the text because of the circumstances existing at the time of the preparation and execution of the will, which preceded the death of the deceased by a very short period. None of the conditions which would permit the court to supply the word allegedly missing from the text is shown to exist. Unless the court were to accept the testimony of the draftsman in explanation of the alleged error, the bequest in the terms in which it is expressed in the will is entirely consistent with a permissible testamentary purpose. The legacy of 50% of the gross estate to the widow is certainly not at great variance with the dispositive scheme as evidenced in other phases of the will. The fact that it is not brings this case outside the limits of the rules set forth by Mr. Justice *1047 Cardozo in Matter of Gallien (247 N. Y. 195). There is no such, ambiguity here as would permit the court to supply the word “ adjusted ” as it is urged to do by the petitioners. (Matter of Baylies, 104 N. Y. S. 2d 238, and cases there cited.) The court accordingly holds that the will is to be construed precisely as it is written and that the bequest in trust consists of 50% of the gross estate after ‘ ‘ payment of all estate and inheritance taxes upon said fifty (50%) percent thereof, which * * * shall be paid out of my residuary estate ”.
Submit decree on notice settling the account in accordance with the rulings herein made.