S. Samuel Di Palco, S.
In this accounting proceeding the court is asked to construe paragraph Third of the testator’s will.
The testator died in 1938. The questioned paragraph creates a trust for the life of his wife and provides that upon termination 80% thereof was to be given to “ such of the following as are then living in equal shares: my brothers Max Weinstein, David Weinstein, Herman Weinstein and Ike Weinstein and my sisters, Sadie Kushin, Rose Horowitz, Lena Kanowitz and Ida Rosen.” The language is immediately followed by:
‘ ‘ In the event, however, that any of my said brothers or sisters shall predecease me, leaving descendants him or her surviving, I *902 direct that the share which the parent would have taken if living he transferred, paid over and delivered to said descendants, in equal share, per capita.
16 In the event, however, that any of my said brothers and sisters shall predecease me, without having descendants him or her surviving, then, in that event, I direct that the share of the one so dying be transferred, paid over and delivered to such of his or her brothers and sisters as are then living, in equal shares, per capita.”
The remaining 20% of the terminated trust is left to certain named charities.
All of the above-named remaindermen survived the testator. Two of them, Max Weinstein and Rose Horowitz, predeceased the life beneficiary, who died in 1960. In behalf of their infant descendants the special guardian contends that the shares of the deceased brother and sister should be distributed among their descendants per capita. The surviving brothers and sisters claim the entire fund passes to them as a gift to a class, the members of which are determined at the death of the life beneficiary. The estates of deceased remaindermen say that they are entitled to share because these gifts of the remainder nominatim vested in their respective decedents at testator’s death.
The primary concern in all construction matters is to arrive at this intention of the decedent and to give effect thereto. (Matter of Buechner, 226 N. Y. 440.) Although the court may not rewrite a will it does have the power to transpose or insert or disregard words or phrases, in order to give effect to testator’s obvious intent. As the Court of Appeals recently said in Matter of Larkin (9 N Y 2d 88, 91): “ All canons of construction are subordinate to this consideration. If the testator’s intention is not clear then ‘ it must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.’ (Matter of Fabbri, 2 N Y 2d 236, 240, emphasis supplied; Matter of Gautier, 3 N Y 2d 502, 509.) If a reading of the entire will reveals a ‘ dominant purpose or plan of distribution ’, the individual parts must be interpreted in the light of that purpose, and be given effect accordingly, despite the fact that a literal reading might yield an inconsistent meaning because of the language or format employed. ’ ’
It is the opinion of the court that the two paragraphs which follow subparagraph (a) of paragraph Third are substitutionary gifts of the remainder and were intended by the testator to apply in the event that any brothers and sisters predeceased the life *903 beneficiary. It is clear that where the testator used the words “predecease me ” he intended the words to read “ predecease her ”. Paragraph Third created a trust of one half of the residuary estate and the testator said that the income and profits were to be paid: “ to my beloved wife Annie Weinstein for and during the term of her natural life and upon her death I direct that the principal constituting the said trust estate or fund be disposed of as follows: ” (emphasis supplied). Disposition is then made to named brothers and sisters “ then living ”. It is clear from this language that the class to take was to be determined at the time the trust terminated; to wit, the date of death of the life beneficiary. It would be unreasonable to read the primary gift of the remainder as fixing the class at the time of death of the beneficiary and the substitutionary gift with the words “ predecease me” as fixing the class at the time of the death of the testator. By so doing the peculiar situation would arise where the alternate remaindermen would have a vested interest and the primary objects of the testator’s bounty, his brothers and sisters, would have only a contingent interest. This the court cannot believe the testator intended. The court is constrained, therefore, to read the words “predecease me” as “predecease her”. Support for this construction is further found in paragraph Fifth of the will where the testator gave absolute legacies to his named brothers and sisters and in paragraph Sixth uses the words “ predecease me ” in providing for substitutionary gifts to their descendants in equal shares per capita. It is obvious that the testator who had no children did not intend to disinherit issue of a deceased brother and sister from sharing in the trust which forms the bulk of his estate.
The intention of the testator to make a substitutional gift is buttressed by the presumption in favor of a testator’s relatives as against strangers to his blood. (7 Warren’s Heaton, Surrogates’ Courts [6th ed.], Construction Favoring Heirs and Next of Kin, § 21, par. 3, p. 171 ; Matter of Robinson, 155 Misc. 412, 415 ; March v. March, 186 N. Y. 99 ; Matter of Larkin, supra ; Matter of Gulbenkian, 9 N Y 2d 363.)
The court rules that the shares that Max Weinstein and Rose Horowitz would have taken had they survived the termination of the trust should be distributed among their descendants in equal shares per capita.
Pursuant to its cy pres power the court directs that the gift to Chevra Lubovitz, an unincorporated association, now nonexistent be paid to its parent organization, Agudas Chasidei Chabad of the United States. (Matter of Jackson, 192 Misc. 618 ; First Methodist Church of Penn Yan v. Putnam, 189 Misc. 519.)
*904 The portion of the reminder bequeathed to the Harlem Hebrew Day and Night Nursery does not lapse because of its dissolution in 1952. The charity was in existence at testator’s death. The cy pres power of the court will be invoked in order to prevent the general charitable purpose of the testator from being defeated by the change in condition that has resulted since his death. (Matter of Leventhal, 212 N. Y. S. 2d 475).
The court will confer with counsel at 12:30 p.m. on July 10, 1961 with a view toward selecting as the recipient of said bequest an organization which will most clearly give effect to the intention of the testator.