S. Samuel, Di Falco, S.
In this proceeding for construction of the will the court is called upon to determine the meaning to be given to the language of gift employed by the testator to bestow a presumably substantial bequest upon 11 designated charities all of which had been the object of his long time interest and the recipients of generous inter vivos donations. In article FIFTH (g) of the will, which he himself drew, he made provision for the questioned legacy in the following manner:
“ I give and bequeath a sum to be determined as hereinafter * * * set forth to [11 named charities in specified percentages].
“ The sum above mentioned shall be the value by which my taxable estate for federal estate tax purposes shall exceed * * * $5,000,000 * * * The bequests made in this Section (g), as well as all other items which are deductible in determining the value of my taxable estate, shall be deducted in determining my taxable estate for federal estate tax purposes in applying the provisions of this paragraph.”
*702 It will be seen that if this formula is literally applied the bequest is totally annulled. This result follows from the fact that under the provisions of the Internal Revenue Code and the language of the will itself, the bequest to charity is to be determined by its deduction from the gross estate before the taxable estate is determined. Hence, if the amount to be given to charity — that is the amount by which the tentative taxable estate exceeds $5,000,000 — is thereafter to “be deducted in determining my taxable estate ” the result will always be zero.
We start the search for the purpose of the testator from the indisputable assumption that it was not his intention to use his testament as a kind of carrot and stick to torment the institutions with which he had been so closely associated throughout his adult life. Yet if the court were to follow the instructions of the will in their literal sense the charitable purpose of the testator, which we must ascribe to him from the very fact that he so carefully and selectively identified the objects of his bounty, we would arrive at a hopeless contradiction and the charities would, be the losers. In a similar situation my predecessor Mr. 'Surrogate Collins once stated that he was “confronted with the choice of ascribing a palpable error to inadvertence or of charging the testator with a manifest absurdity and visiting its consequences upon the primary objects of his generosity ” (Matter of Baylies, 104 N. Y. S. 2d 238, 240). He found a wealth of authority which enabled him to avoid the result which literal compliance with the instructions of the testator would have required and fortunately the openly expressed and overriding purpose of the testator leaves the same choice open to the court in the matter of the will at bar.
The text of this instrument bears more than one indication of the attention the testator devoted to the impact of the tax burden and the language with which we are presently dealing is in itself a manifestation of that concern. The petitioners have suggested that in the sequence of the execution of his purpose the subject instructions followed as an error of preoccupation and that what Mr. Graustein actually had in mind was a charitable bequest in an amount to be determined by deducting from his gross estate the aggregate of his debts and administration expenses, and the sum total of all taxable legacies together with the taxes attributable thereto. If that formula can be substituted for the A B C of the testamentary language, the over-riding purpose of the testator to benefit the 11 charitable enterprises he designated can be preserved intact. To do so represents an exercise of the only logical deduction *703 within the scope of the will but one so clearly within the limits of the court’s authority as to constitute its adoption a duty in the effort “ to get at the correct meaning ” as Chief Judge Cabdozo described it in Matter of Gallien (247 N. Y. 195) where he said at page 200: ‘£ One of the best known of those principles is that if two or more constructions are reasonably possible, the one that will sustain the validity of the will is to be preferred, generally speaking, to the one that will defeat it * * * The court struggles to preserve, and surrenders to nothing short of obvious compulsion. In the attainment of its end, it may £ reject words and limitations, supply them or transpose them, to get at the correct meaning ’ ’ ’.. Gallien is probably the keystone of the case law which permits common sense to transpose, delete or insert in a will whatever words are necessary to effectuate the manifest purpose of the testator for the construction of wills, as Surrogate Collins pointed out in BayUes (supra, p. 240) “is not a cybernetic process and allowance may be made for error whether it be the error of the scrivener # * * or of the testator.” (see, also, Matter of Fabbri, 2 N Y 2d 236; Matter of Nager, 45 Misc 2d 1050; Matter of Weinstein, 28 Misc 2d 901; Matter of Chadbourne, N. Y. L. J. May 21, 1970, p. 16, col. 4; Matter of Tully, 28 Misc 2d 630; Matter of Dorson, 22 Misc 2d 945; Matter of Pond, 116 N. Y. S. 2d 783; Matter of Brown, 197 Misc. 938).
For the reasons stated the court holds that article FIFTH (g) of the will is to be construed as though the testator "had directed that the aggregate gift to the specified charities was to be determined by deducting from the gross estate the debts of the testator, the expenses of administering the estate, the amount held to constitute the marital deduction and, finally, the total of all .of the other legacies and the taxes which they generated.